STATE OF MINNESOTA

IN SUPREME COURT

A13-2225

| | |
|---|---|
| Court of Appeals | Dietzen, J. |
| | Concurring, Stras and Lillehaug, JJ. |
| | Took no part, Hudson, J. |

| | |
|---|---|
| In re Petition for Distribution of Attorney's Fees between Stowman Law Firm, P.A., and Lori Peterson Law Firm, formerly d/b/a Lori Peterson and Associates | Filed: October 28, 2015 Office of Appellate Courts |

_____

Erik F. Hansen, Burns & Hansen, P.A., Wayzata, Minnesota; and

David L. Stowman, Stowman Law Firm, Detroit Lakes, Minnesota, for appellant.

Zenas Baer, Zenas Baer Law Office, Hawley, Minnesota, for respondent.

_____

S Y L L A B U S

1.      An attorney who withdraws for good cause from representation under a contingent-fee agreement may recover in quantum meruit the reasonable value of the services rendered prior to withdrawal, provided that the recovery upon withdrawal is not otherwise addressed in the agreement and the attorney satisfies the ethical obligations governing withdrawal from representation.

2.      The refusal of a client to accept a settlement offer does not constitute good cause for an attorney to withdraw from representation under a contingent-fee agreement.

Affirmed.

1

DIETZEN, Justice.

Appellant Stowman Law Firm, P.A. (Stowman), which represented a client pursuant to a contingent-fee agreement, voluntarily withdrew from the representation of the client when efforts to settle the case failed. The client retained substitute counsel who then successfully settled the case. Stowman brought an action to recover in quantum meruit the value of the services provided prior to the withdrawal. Following a bench trial, the district court found that Stowman failed to establish good cause for withdrawal and, therefore, was not entitled to recover in quantum meruit. The court of appeals affirmed. We conclude that an attorney may withdraw from a contingent-fee agreement with or without cause, provided that the withdrawal satisfies the rules of professional responsibility. But the attorney must establish that the withdrawal is for good cause in order to recover in quantum meruit the reasonable value of the services rendered prior to withdrawal. Because Stowman failed to establish good cause, we affirm.

In July 2007 Stowman entered into a contingent-fee agreement to represent a client in a medical-malpractice claim against a doctor based on a one-third contingent fee, plus reimbursement for out-of-pocket expenses. The contingent-fee agreement, which is only three-quarters of a page in length, permitted Stowman to "withdraw from representation of this agreement," if "after reasonable investigation of [the] claim" and notice to the client, it "determine[d] that it is not feasible to prosecute [the] claim." The agreement also states that no settlement may be made without the client's consent, and provides in relevant part that the client agreed to pay Stowman for its services one-third

2

"of the gross amount recovered." "If there is no recovery, by either settlement or verdict, [the client] shall not be indebted to said attorneys for services rendered, and there shall be no attorney's fees paid."

Over the next 2 years Stowman investigated the facts and reviewed the law to determine whether there was a basis for a medical-malpractice claim against the doctor. Stowman completed its investigation and decided to proceed with the case. To support its theory of the case, Stowman retained expert witnesses to provide favorable testimony on liability and damages. Stowman did not file a lawsuit or conduct any formal discovery.

In December 2009 the parties participated in mediation to resolve the case. Stowman agreed to present a settlement demand of $1.6 million at the mediation even though the Stowman lawyer responsible for the case believed the demand was too high. The mediation recessed without reaching a settlement. The next day, the mediator notified Stowman that the doctor would offer $100,000 if that amount would settle the claim. Stowman repeatedly advised the client to accept the offer, but the client declined to do so. Stowman subsequently told the client that the firm would withdraw if the case was not settled by January 1, 2010.

During the same time period, Stowman sought an advisory opinion from the Office of Lawyers Professional Responsibility (OLPR) on how to ethically withdraw from the client's case. As part of that exchange, the Stowman lawyer forwarded notes of a conversation with the client, which stated:

3

> I have a client whose expectations I will be unable to meet. She has compromised to $1.4 million. The defense has offered $100,000.00, which is the high end of my evaluation of her damages and settlement value. I plan to withdraw from her representation if she does not accept the settlement offer.

The OLPR advised Stowman to follow the process to decline or terminate representation set forth in Minn. R. Prof. Conduct 1.16(b).

On January 4, 2010, Stowman verbally notified the client that it was withdrawing from representation. In a letter to the client the next day, the Stowman lawyer stated:

> I do not think I can obtain a better result, either through continued negotiations, mediation, or at trial than the $100,000.00 offer from the defense. Therefore, I must withdraw immediately to allow you the opportunity to find an attorney whose evaluation of your claim is consistent with yours.

No other reasons for withdrawal were stated in the letter, or in other documents, between the mediation and the withdrawal.

Thereafter, the client retained respondent Lori Peterson Law Firm (Peterson) as substitute legal counsel to represent her pursuant to a 40-percent contingent-fee agreement. Subsequently, Peterson successfully negotiated a settlement of the claim for $200,000.

When Stowman learned of the settlement, it filed and served an attorney's lien, and asked the defendant's attorney to name Stowman on the settlement draft in order to protect its fee interest. In February 2011 the client and the defendants entered into a confidential settlement agreement and mutual full and final release of all claims. The settlement agreement provided, among other things, that in consideration of the settlement terms, which included any claim for attorney fees, the client released the

4

defendants and other releasees. Additionally, the client had 30 days to negotiate a resolution of any attorney liens, and if the negotiation was unsuccessful, a check in the amount of $200,000 payable to the client, Peterson, and Stowman would be delivered to Peterson's attorney.

Separately, the client, Peterson, and Stowman entered into a distribution agreement that established a process to facilitate the distribution of the settlement proceeds to the client pending resolution of the fee dispute between Peterson and Stowman. The agreement provided in relevant part:

> 40% of the total settlement will be placed into Lori Peterson's law firm trust account. The costs claimed as advanced by these two law firms will also be placed into that trust account. None of these amounts will be distributed without a final order of the court or arbitrator in the fee dispute between Lori Peterson and the Stowman Law Firm, or by mutual consent of Lori Peterson and the Stowman Law Firm.
> . . . .
>
> The balance of the settlement proceeds will be paid to [the client].

The amount of the contingent fee and costs claimed by Stowman and Peterson was deposited into Peterson's trust account; the balance of the settlement proceeds was paid to the client.

Because the client was unable to resolve the contingent-fee dispute between Stowman and Peterson, Stowman petitioned the district court for recovery of the costs advanced and for an equitable distribution of the contingent fees. Stowman sought a division of the fees based on the value of the services the firm rendered to the client prior to its withdrawal, under a theory of quantum meruit. The district court denied Peterson's motion for summary judgment and the matter proceeded to a bench trial. The district

5

court limited the trial to whether Stowman "rightfully withdrew from representation" so as to be entitled to recover in quantum meruit. The court found that Stowman withdrew because the client failed to follow Stowman's recommendation to accept the offer of settlement, which was based on the firm's belief that a better offer could not be obtained at trial. The court concluded that Stowman failed to establish good cause for its withdrawal and therefore could not recover in quantum meruit. Further, the court concluded that the distribution agreement did not create a contractual right for recovery in favor of Stowman, but that Stowman was entitled to recover its costs of $8,273. The court of appeals affirmed. *In re Distribution of Attorney's Fees between Stowman Law Firm, P.A. & Lori Peterson Law Firm*, 855 N.W.2d 760, 760 (Minn. App. 2014). We granted review.

## I.

Stowman acknowledges that an attorney who represents a client under a contingent-fee agreement and voluntarily withdraws from representation loses the right to bring a breach-of-contract claim in order to recover damages from the client. But, Stowman contends, recovery in quantum meruit should be permitted when an attorney ethically withdraws from a contingent-fee matter because it is unjust for a client to retain the benefit of an attorney's services without paying for that benefit. Stowman argues that we should extend our holding in *Lawler v. Dunn*, 145 Minn. 281, 176 N.W. 989 (1920), to allow an attorney who voluntarily withdraws from representation in a contingent-fee matter to recover in quantum meruit the value of the services provided. Alternatively, if

6

an attorney is required to show good cause to permit recovery in quantum meruit after a voluntary withdrawal, Stowman argues that it had good cause to withdraw.

We review questions of law de novo and questions of fact under the clearly erroneous standard. *In re Welfare of J.H.*, 844 N.W.2d 28, 34-35 (Minn. 2014); *see also* Minn. R. Civ. P. 52.01. When determining whether a finding is clearly erroneous we view the evidence in the light most favorable to the district court's findings, and examine the record to see if there is reasonable evidence to support the findings. *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013). A finding of fact is clearly erroneous if we are "left with the definite and firm conviction that a mistake has been made." *In re Stisser Grantor Trust*, 818 N.W.2d 495, 507 (Minn. 2012).[1]

To answer the questions raised we will first review the relevant law regarding attorney-client fee disputes and quantum meruit principles, and then apply those principles to the issues before us.[2]

---

[1] The procedural posture of this case is somewhat unusual. The fee petition names Peterson and Stowman as parties, even though the attorney-client relationship, and therefore the claim, is logically against the client. But Stowman's petition procedure is consistent with the parties' distribution agreement. Specifically, in the distribution agreement, the law firms and the client acknowledged that the dispute over the funds held in trust was between the law firms and that the client waived any claim to the funds in dispute. Thus, Peterson's and Stowman's respective claims to the funds held in trust are in the nature of an interpleader action. *See* Minn. R. Civ. P. 22. Because no party contends that Stowman's petition is brought against the wrong party, we turn to the merits of the claim.

[2] Quantum meruit is a term that is frequently misunderstood, largely because it may apply to two very different circumstances: as a claim at law for the fair market value of a party's performance under an implied-in-fact contract, or as a claim in equity as restitution for the value of a benefit conferred in the absence of a contract under a theory

(Footnote continued on next page.)

A.

Our court has the power and authority to regulate the practice of law, including the power to adopt rules regulating the ethical obligations of attorneys. *See Minneapolis Star & Tribune Co. v. Hous. & Redev. Auth.*, 310 Minn. 313, 318-19, 246 N.W.2d 448, 452 (1976) (explaining that the court adopted the code of professional responsibility pursuant to its authority to regulate the practice of law); *Petition for Integration of Bar of Minn.*, 216 Minn. 195, 199, 12 N.W.2d 515, 518 (1943) (stating "the making of regulations and rules governing the legal profession falls squarely within the judicial power thus exclusively reserved to the court."). Thus, even apart from contract terms, ethical rules govern the attorney-client relationship. For example, an attorney's fee must be reasonable under the circumstances, even if contingent on the outcome. Minn. R. Prof. Conduct 1.5(a), (c); *see also Holt v. Swenson*, 252 Minn. 510, 514-15, 90 N.W.2d 724, 728 (1958) (holding that a contingent-fee agreement is permissible so long as it is not overreaching or unreasonable).

Specifically, Minn. R. Prof. Conduct 1.5(c) provides:

> A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined . . . . Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a

---

(Footnote continues from previous page.)
of unjust enrichment. *Black's Law Dictionary* 1437 (10th ed. 2014); *see also Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 256 (Nev. 2012). Stowman's express contract with its client precludes recovery under the first theory, but its argument for recovery in quantum meruit for the reasonable value of services provided prior to withdrawal, as an implied term in all contingent-fee agreements, implicates the second theory.

recovery, showing the remittance to the client and the method of its determination.

The Minnesota Rules of Professional Conduct also address an attorney's ability to withdraw from representation of the client. An attorney is required to withdraw from representation in certain circumstances. Minn. R. Prof. Conduct 1.16(a). A lawyer may also permissively withdraw for various delineated reasons, including when "withdrawal can be accomplished without material adverse effect on the interests of the client." *Id*. at 1.16(b)(1).

We have recognized the different nature of the attorney-client relationship compared to other contractual relationships and, therefore, we have applied different legal principles to interpret and enforce attorney-fee agreements. *See Krippner v. Matz*, 205 Minn. 497, 506, 287 N.W. 19, 24 (1939) ("While [an attorney-client] contract may have similar attributes, the agreement is, essentially, in a classification peculiar to itself."). Because the attorney-client relationship, even if memorialized in a written agreement, is subject to ethical and professional rules promulgated by the court, ordinary contract principles must yield at times to these paramount standards. *Id.* (stating "[w]e think it is a misconception to attempt to force an agreement between an attorney and his client into the conventional modes of commercial contracts").

The concurrence would resolve this dispute simply on the basis of the contract terms. We do not agree. Stowman did not assert a breach-of-contract claim, nor does it seek to recover the contract amount. Rather, Stowman seeks recovery based on the value of the services it provided to the client. *See Int'l Materials Corp. v. Sun Corp.*, 824

9

S.W.2d 890, 895 (Mo. 1992) ("The . . . lawyers failed to fulfill the terms of their contingent fee contract with the client; therefore contractual recovery is not proper. . . . [T]he lawyers' only recovery could be in quantum meruit for benefits conferred."); *see also Burns v. Stewart*, 290 Minn. 289, 300-01, 188 N.W.2d 760, 767 (1971) (stating the court "should not be unmindful of the equities" and permitting attorney to recover "for the reasonable value of his services" notwithstanding a contractual contingent-fee term). We therefore turn to the principles that govern the claim Stowman asserted.

We have previously considered the recovery permitted to an attorney when the attorney-client relationship is terminated, with or without cause. *Burns*, 290 Minn. at 291, 188 N.W.2d at 762; *Lawler v. Dunn*, 145 Minn. 281, 283, 176 N.W. 989, 989 (1920). In *Lawler*, we considered whether a client's termination of an agreement with an attorney for legal representation, without cause, constituted a breach of contract that entitled the attorney to damages. 145 Minn. at 283, 176 N.W. at 989. The attorney was retained to represent the client at trial in a criminal matter for a flat fee. *Id.* at 282, 176 N.W. at 989. The attorney asserted that the parties' agreement included a term for continued representation of the client after a conviction for purposes of a post-trial motion and appeal. *Id.* at 282-83, 176 N.W. at 989. The attorney filed a post-trial motion and began work on the appeal, at which point the client terminated the attorney. *Id.* at 283, 176 N.W. at 989. The attorney sued the client for breach of contract, alleging he was entitled to recover the estimated fees for the successful completion of the appeal. *Id.* The trial court submitted the case to the jury on the attorney's theory. *Id.*

On appeal, we held that a contract for legal representation between an attorney and a client may be cancelled by the client at any time, with or without cause. Further, we noted that the discharge of an attorney without cause does not constitute a breach of contract because the right to terminate is an implied term of the contract. We noted that, while a court "will not penalize a client for an exercise of the right" to terminate a representation agreement and settle a matter without the attorney's "consultation or consent," when the client does so the "measure of relief of the attorney is the reasonable value of his services." *Id.* at 285, 176 N.W. at 990; *see also Meagher v. Kavli*, 251 Minn. 477, 491-92, 88 N.W.2d 871, 881-82 (1958) (stating that when a representation agreement is ended, the attorney is left "in a position where he may only recover the reasonable value of the services he has rendered" and thus "[a]n attorney may recover for his services under a common count in general assumpsit").[3] This implied term is premised upon the understanding of the parties that the attorney rendered services with the expectation of payment, the client was aware of that expectation, and the client accepted the attorney's services without objection. *See High v. Supreme Lodge of World, Loyal Order of Moose*, 210 Minn. 471, 473-74, 298 N.W. 723, 725 (1941) (explaining that attorney could recover reasonable value of services rendered under a theory of quantum meruit when the attorney proved "(1) services were rendered; (2) under

---

[3] Historically, quantum meruit was one of the common counts—a subspecies of the writ of indebitatus or general assumpsit. 1 Joseph M. Perillo, *Corbin on Contracts* § 1.20 (rev. ed. 1993).

circumstances from which a promise to pay for them should be implied; and (3) their value").

We have applied the *Lawler* quantum meruit rule to a contingent-fee agreement. In *Burns*, 290 Minn. 289, 188 N.W.2d 760, the attorney entered into a contingent-fee agreement that entitled him to a fee equal to one-fourth of any amount of personal property the client recovered from her husband, who had deserted her and left her financially destitute. *Id.* at 292, 188 N.W.2d at 762. The attorney initiated a lawsuit against the husband in California. *Id.* During settlement discussions, the client fired the attorney. *Id.* Later, represented by different lawyers, the client eventually recovered funds by settling the California action. *Id.* at 292, 188 N.W.2d at 763. We held that the attorney, who had performed substantial services under the contingent-fee agreement and was terminated by the client before funds were recovered, was entitled to recover the reasonable value of his services. *Id.* at 301, 188 N.W.2d at 767. We allowed the attorney to recover the reasonable value of services rendered in quantum meruit even though an express contract between the attorney and client addressed fees and the attorney was not entitled to recover fees under the terms of that contract.[4]

---

[4]     The concurrence relies on contract principles to argue that the remedy of quantum meruit is not available because the contingent-fee agreement generally addresses when Stowman may recover a fee and provides that Stowman may withdraw if it determines the claim is not feasible. This approach fails to account for the ethical obligations that distinguish the attorney-client agreement from the typical commercial contract relationship. *See Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 445 (Colo. 2000) ("An attorney-client relationship relies on trust and confidence between the client and the attorney," which distinguishes that relationship "from other business relationships" and "creates a somewhat different framework for the analysis of quantum meruit claims.").

(Footnote continued on next page.)

Both *Lawler* and *Burns* involved situations in which the client terminated the agreement with the attorney. We have not determined whether *Burns* and *Lawler* should be extended to allow an attorney who voluntarily withdraws from representation under a contingent-fee agreement to recover in quantum meruit the reasonable value of the services rendered to the client prior to withdrawal.[5] We therefore turn next to this question.

## B.

Stowman argues that an attorney who withdraws from representation should be allowed to recover in quantum meruit, provided the withdrawal satisfies the attorney's ethical obligations. Stowman relies on *Lawler* to argue that recovery in quantum meruit is an implied term in all contingent-fee agreements, regardless of the reasons for withdrawal.

Our decision in *Lawler* does not support Stowman's proposed rule. In *Lawler*, we concluded that an implied term of a contract between an attorney and client is that the

---

(Footnote continues from previous page.)
The Rules of Professional Responsibility require attorneys to withdraw in certain circumstances. For example, an attorney must withdraw when continued representation "will result in violation of the Rules of Professional Conduct or other law" or the attorney's ability to represent the client is "materially impair[ed]." Minn. R. Prof. Conduct 1.16 (a)(1)-(2). The ethical obligation of the attorney to withdraw raises the question of whether the attorney is entitled to recover his or her fees up to the point of withdrawal.

[5]  Relying on *Burns*, the court of appeals has held that "an attorney who rightfully withdraws is entitled to compensation for the reasonable value of his or her services, based not upon the contingency fee contract, but upon quantum meruit." *Ashford v. Interstate Trucking Corp.*, 524 N.W.2d 500, 502-03 (Minn. App. 1994); *see also Stall v. First Nat'l Bank of Buhl*, 375 N.W.2d 841, 845-46 (Minn. App. 1985).

13

contract may be terminated with or without cause, but in certain circumstances the attorney could recover the reasonable value of the services rendered. Specifically, the remedy we provided to the attorney in *Lawler* was based on a client termination without cause. The underlying reasoning was that the attorney provided professional services under circumstances in which a promise to pay should be implied. The rule we adopted in *Lawler* was calculated to balance the right of the client to terminate the attorney without cause against the right of the attorney to be paid for services for which there was a reasonable expectation of payment. 145 Minn. at 284-85, 176 N.W. at 990.

The ethical obligations of attorneys support the *Lawler* rule. To begin with, the ethical rules may require an attorney to withdraw for good cause. Minn. R. Prof. Conduct 1.16(a). For example, an attorney may conclude that withdrawal is required because continuing representation will result in a violation of the rules of professional conduct.[6] The attorney in this situation, forced to withdraw from representation, loses the

---

[6] The rule proposed by the concurrence would prohibit an attorney who withdraws for good cause, such as in the case of client perjury, *see* Minn. R. Prof. Conduct 3.3(a) (prohibiting a lawyer from knowingly offering false evidence), from recovering any fee unless that recovery is expressly provided for in the contract. Additionally, the concurrence's proposed rule would permit the client to terminate an attorney without liability for any fees unless the parties' agreement expressly addressed that possibility. In our view, the concurrence's proposed rule, which appears to be unique, ignores the attorney's ethical obligations that require withdrawal in some circumstances and is contrary to our case law. *See Burns v. Stewart*, 290 Minn. 289, 291, 188 N.W.2d 760, 762 (Minn. 1971); *Lawler*, 145 Minn. at 283, 176 N.W. at 989. The concurrence's rule would encourage attorneys, in the face of contract silence on withdrawal for good cause, to continue the representation simply to recover a fee, which is inconsistent with the foundation of the attorney-client relationship. *Int'l Materials Corp.*, 824 S.W.2d at 894 ("[T]he lawyer-client relationship is founded on trust and confidentiality" and "when

(Footnote continued on next page.)

14

opportunity to earn a fee under the contingent-fee agreement, despite having done what was required under the terms of the agreement and despite providing the client with valuable services. Further, the attorney is ethically obligated to protect the client's interests, including by providing successor counsel with copies of the attorney's file in the case. *See* Minn. R. Prof. Conduct 1.16(d). In *Lawler*, we balanced the client's right to terminate the relationship with or without cause, with the attorney's ethical obligations to the client and the need for public confidence in the legal profession to conclude that the attorney's right to recovery in these circumstances is limited to the "reasonable value" of services. 145 Minn. at 284, 176 N.W. at 990 (explaining that the rule allowing an attorney to recover the reasonable value of services rendered "is well calculated to promote public confidence in the members of an honorable profession whose relation to their clients is personal and confidential" (citation omitted)). These same factors weigh heavily in favor of allowing an attorney who terminates the relationship for good cause before resolution of the claim to recover the reasonable value of services rendered if the client ultimately recovers in the case.

We conclude that an attorney who withdraws for good cause from representation under a contingent-fee agreement may recover in quantum meruit the reasonable value of services rendered prior to withdrawal, provided that the attorney's recovery in the event of withdrawal for good cause is not otherwise addressed in the contract and the attorney

---

(Footnote continues from previous page.)
those foundations deteriorate, it is not only impractical to persist in the relationship, it diminishes the integrity of the bar to do so." (citation omitted)).

15

satisfies the ethical obligations governing withdrawal from representation. Three reasons support our conclusion.

First, ordinary principles of contract law will not always resolve the question of an attorney's right to recover in quantum meruit following a good-cause withdrawal because the attorney-client relationship is *also* subject to ethical and professional rules promulgated by the court.[7] Indeed, ordinary contract principles may not apply given the termination of the attorney-client contract. *See Tillman v. Komar*, 181 N.E. 75, 75-76 (N.Y. 1932) ("After cancellation [of a retainer agreement], its terms no longer serve to establish the sole standard for the attorney's compensation."). Further, ethical obligations continue after an attorney has withdrawn from representation and, therefore, it is not unreasonable to allow an attorney who withdraws for good cause to recover in quantum meruit if the client ultimately recovers.

Second, allowing an attorney who withdraws for good cause to recover the reasonable value of the professional services provided up to the point of withdrawal is consistent with our past decisions. Generally, attorney withdrawal for good cause is not

---

[7] The attorney and client can, of course, address in a representation agreement the subject of the agreed-upon recovery in the event of the attorney's good-cause withdrawal. A contingent-fee agreement stating that the attorney is entitled to recover for services provided, or recover a portion of a contingent fee owed to substitute counsel, when a recovery is obtained after the attorney withdraws from representation for good cause must comply with the Rules of Professional Conduct. *See* Minn. R. Prof. Conduct 1.5(a) (stating a lawyer must charge reasonable fees); *see also Meagher*, 251 Minn. at 490-91, 88 N.W.2d at 882 (explaining that the court will exercise its authority to oversee fee agreements and prevent overreaching by attorneys); *Holt*, 252 Minn. at 514, 90 N.W.2d at 728 (explaining that the court will prohibit unreasonable or unconscionable terms in contingent-fee agreements). We express no opinion on the reasonableness of any such provision.

16

voluntary or caused by the conduct of the attorney but instead is typically due to the conduct of the client. In that case, the attorney is providing professional services of value to the client under circumstances from which a promise to pay for those services should be implied. *See High*, 210 Minn. at 473, 298 N.W. at 725 (stating that to recover in quantum meruit, an attorney must prove that services were provided, that there was an implied promise to pay, and the value of those services); *Lawler*, 145 Minn. at 285, 176 N.W. at 990; *accord Burns*, 290 Minn. at 301, 188 N.W.2d at 767 (concluding that a contingent-fee attorney who devotes substantial time, money, and energy to a client's cause should not be precluded from recovering for the reasonable value of his services if the client terminates the agreement prior to recovery). A contingent-fee attorney who performs work based on these reasonable expectations should be allowed to recover the reasonable value of services rendered, provided the attorney-client relationship is terminated for good cause prior to the client's recovery. *See Roberge v. Cambridge Co-op. Creamery*, 248 Minn. 184, 188-89, 79 N.W.2d 142, 148 (1956) ("[R]egardless of what the original intention of the parties was, as operations continued and difficulties were encountered, the parties so conducted themselves that it must be inferred that defendant expected to pay plaintiff the reasonable value of his services."); Restatement (Second) of Contracts § 5 (1981).

On the other hand, when an attorney terminates the attorney-client relationship without good cause the circumstances are materially different, because such an attorney demonstrates a willingness to forfeit a fee. *See, e.g., Rice v. Perl*, 320 N.W.2d 407, 411 (Minn. 1982) ("[A]n attorney . . . who breaches his duty to his client forfeits his right to

17

compensation."); *In re Lee's Estate*, 214 Minn. 448, 460, 9 N.W.2d 245, 251 (1943) ("[A]n attorney at law who is unfaithful in the performance of his duties forfeits his right to compensation."); *see also Dinter v. Sears, Roebuck & Co.*, 651 A.2d 1033, 1039 (N.J. Super. 1995) (stating the withdrawing lawyer "could not . . . have reasonably expected payment after" he "terminated his representation" under a contingent-fee agreement, and the clients and successor attorney "should [not] reasonably have expected that [the lawyer] would share in" a later recovery "absent a clear agreement to that effect" with the clients and successor attorney). Absent some express contract language to the contrary, it is objectively unreasonable for an attorney in these circumstances to expect compensation for pre-withdrawal services. This is because the reasonable expectation of at least the client, if not both parties to a contingent-fee agreement, is that the attorney who voluntarily withdraws without good cause forfeits the right to recover a portion of a contingent fee later obtained by substitute counsel.

Moreover, to allow a contingent-fee attorney to withdraw without good cause and then recover a fee in quantum meruit may impermissibly shift the balance of power in contingent-fee arrangements to favor the attorney's economic interest[8] over the objectives of the client. Specifically, allowing recovery following withdrawal without good cause would encourage attorneys to withdraw from a case simply because a client refused to

---

[8]     Stowman contends that requiring an attorney to show good cause for withdrawal punishes attorneys by denying equitable recovery for the work performed. It further contends that this rule does not benefit the client and only results in a windfall for substitute counsel. But Stowman's proposed rule would allow an attorney to withdraw simply due to the attorney's change of mind about the risk the case poses.

settle the case, even though an attorney must "abide by a client's decision whether to settle a matter." Minn. R. Prof. Conduct 1.2(a). Additionally, such a rule may unfairly limit the ability of the client to secure substitute counsel. Successor counsel may be legitimately concerned with the economics of sharing a future contingent fee with the prior counsel. *See also Dinter*, 651 A.2d at 1040 (refusing to permit recovery in quantum meruit to an attorney who withdrew after an unsuccessful trial because "such an approach might also cause a prospective new attorney to pause before undertaking representation to prosecute an appeal or subsequent trial after remand.").

Third, decisions from other jurisdictions support our conclusion. Most states that have considered this issue have recognized the right of an attorney to recover for services that were rendered prior to withdrawal, so long as the attorney's withdrawal from the case is for a "justifiable" reason or "good cause." George Blum, Annotation, *Circumstances Under which Attorney Retains Right to Compensation Notwithstanding Voluntary Withdrawal from Case*, 53 A.L.R. 5th 287, 303-04 (1997); *see Faro v. Romani*, 641 So. 2d 69, 71 (Fla. 1994); *Lofton v. Fairmont Specialty Ins. Managers, Inc.*, 367 S.W.3d 593, 597 (Ky. 2012); *Bell & Marra, pllc v. Sullivan*, 6 P.3d 965, 970 (Mont. 2000); *Int'l Materials Corp. v. Sun Corp., Inc.*, 824 S.W.2d 890, 894 (Mo. 1992); *Royden v. Ardoin*, 331 S.W.2d 206, 209 (Tex. 1960). These courts have reasoned that a good-cause requirement aligns with the underlying purpose of contingent-fee agreements and

19

protects the valuable function such arrangements play in the modern legal system. *See Lofton*, 367 S.W.3d at 593; *Bell & Marra, pllc*, 6 P.3d at 970.[9]

Good cause in this context is not easily defined, but is narrow in scope, and depends on the facts and circumstances of each case. *See Bell & Marra, pllc*, 6 P.3d at 970 (explaining that good-cause withdrawal that would allow a contingency-fee attorney to recover the reasonable value of services rendered under quantum meruit generally exists when the client has engaged in culpable conduct or the continued representation would violate the ethical duties of the lawyer). Generally, good cause requires that the attorney establish the client has engaged in culpable conduct and the attorney has not, and that the attorney's continued representation of the client would violate the attorney's ethical obligations. Thus, good cause may include the reasons for mandatory withdrawal in the rules of professional responsibility. *See* Minn. R. Prof. Conduct 1.16(a) (stating that a lawyer shall withdraw from representation when the representation will result in a violation of the rules of professional conduct or other law, or the lawyer's physical or mental condition materially impairs his or her ability to represent the client). Additionally, good cause may include some of the reasons for permissible withdrawal in the rules of professional conduct. *See, e.g.*, Minn. R. Prof. Conduct 1.16(b)(2)-(3).

---

[9] West Virginia is the only state that allows an attorney who voluntarily withdraws without good cause to recover in quantum meruit. *See May v. Seibert*, 264 S.E.2d 643, 647-48 (W. Va. 1980) (allowing quantum meruit recovery if the client was not prejudiced by the withdrawal).

## II.

Stowman argues in the alternative that it had good cause to withdraw. According to Stowman, its withdrawal was in accordance with Minn. R. Prof. Conduct 1.16(b)(1), which permits an attorney to withdraw if "the withdrawal can be accomplished without material adverse effect on the interests of the client," and therefore it had good cause to withdraw. Rule 1.16(b)(1) allows an attorney to withdraw from representation for no reason or any reason if the withdrawal will not materially harm the client's interests. The focus of this rule is on the impact the withdrawal will have on the client's interests, and not the attorney's reason for withdrawing. The definition of good cause we have adopted, however, focuses on the attorney's reasons for withdrawal and the cause of those reasons and does not include permissive withdrawal for no reason under Rule 1.16(b)(1).

Stowman also argues that the client's refusal to consider a reasonable settlement offer constitutes good cause to withdraw. We disagree. The decision whether to settle a case is the client's to make, and the attorney must accept the decision made. *See* Minn. R. Prof. Conduct 1.2(a) ("A lawyer shall abide by a client's decision whether to settle a matter."). Dissatisfaction with a client's exercise of that right does not constitute good cause for a lawyer's withdrawal from representation. *See Auguston v. Linea Aerea Nacional-Chile SA*, 76 F.3d 658, 663 (5th Cir. 1996) (stating the "failure of the client to accept a settlement offer does not constitute just cause for a withdrawing attorney to collect fees."); *Estate of Falco*, 233 Cal. Rptr. 807, 816-17 (Cal. App. 1987) (stating that a client's right to reject a settlement "cannot constitute cause" for a lawyer's withdrawal,

and "[g]iven that it was [the clients'] absolute right to refuse settlement, it would be anomalous to hold that their refusal to settle constitutes lack of cooperation sufficient to award attorneys' fees in quantum meruit."). We conclude that the refusal of a client to accept a settlement offer in a civil case does not constitute good cause to withdraw.

The district court determined that Stowman withdrew from representation because the client refused to accept the $100,000 settlement offer and the law firm believed that it could not obtain a better recovery at trial. This finding is supported by the record and is not clearly erroneous. After receiving the $100,000 settlement offer, the attorney repeatedly advised the client to accept the offer and told her that Stowman would withdraw from representation if the case was not settled by January 1, 2010. The client refused to accept the offer. In a memo in the file, the attorney noted that he could not meet the client's expectations and would "plan to withdraw from her representation if she did not accept the settlement offer." In a letter dated January 5, 2010, a Stowman lawyer stated:

> I do not think I can obtain a better result, either through continued negotiations, mediation, or at trial than the $100,000.00 offer from the defense. Therefore, I must withdraw immediately to allow you the opportunity to find an attorney whose evaluation of your claim is consistent with yours.

No other reasons for withdrawal were stated in the letter. Therefore, Stowman's withdrawal due to the client's refusal to accept a settlement offer was not for good cause.

III.

In summary, we conclude that because Stowman did not have good cause to withdraw, it is not entitled to recover in quantum meruit a portion of the contingent fee obtained by Peterson.[10]

Affirmed.


HUDSON, J. took no part in the consideration or decision of this case.

---

[10] Before this court, Stowman also argued the district court erred by: (1) adopting the standard for recovery in quantum meruit drawn from *Ashford v. Interstate Trucking Corp. of Am.*, 524 N.W.2d 500, 501 (Minn. App. 1994), in its order denying summary judgment, and then applying a different standard at trial; and (2) denying Stowman's motion for a new trial based upon newly discovered evidence consisting of the settlement agreement between the client and the defendants. We did not grant review on either issue, and therefore they are not properly before us and we decline to address them. *Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 223 n.14 (Minn. 2014) (stating that a party waived argument by failing to raise the issue in its petition for review); *Tatro v. Univ. of Minn.*, 816 N.W.2d 509, 515 (Minn. 2012) (same).

STRAS, Justice (concurring).

I agree with the court that the Stowman Law Firm is not entitled to recover a fee in this case. In contrast to the court, however, I would apply ordinary contract principles, not a good-cause standard, to reach this conclusion.

The court and I part company on the need to resolve the question of whether to extend *Lawler v. Dunn*, 145 Minn. 281, 176 N.W. 989 (1920), and *Burns v. Stewart*, 290 Minn. 289, 188 N.W.2d 760 (Minn. 1971), to allow a law firm to recover a portion of a contingency fee when it has withdrawn voluntarily. The court's theory seems to be that the retainer agreement does not address the precise circumstance presented by this case: a voluntary withdrawal caused by disagreement about the settlement value of the client's action. In my view, the court's reading of the agreement is too narrow.

The first paragraph of the retainer agreement states that the client retains Stowman "in the prosecution and recovery of my claim and cause of action . . . ." The second paragraph says that the client "agree[s] to pay *them* for *their* services a sum equal to thirty-three and one-third (33 1/3%) percent of the gross amount recovered." (emphases added). The second paragraph makes clear that the firm receives fees for its "services" only if the "recovery" is by "them," the firm's attorneys. Among other things, the "amount recovered" refers back to the retention of Stowman for "recovery of [the] claim." Such an assumption is also built into the third paragraph: "[i]f there is no recovery by either settlement or verdict, I shall not be indebted to said attorneys for

services rendered, and there shall be no attorney's fees paid." Again, the reference to "recovery" refers to recovery by *the firm's attorneys*.

The sixth paragraph covers how the firm is to handle funds from a settlement or judgment. It states that "from the proceeds, if any, coming into the possession of the [attorneys], by way of settlement or judgment, the attorneys are authorized to deduct their attorney's fees and costs of litigation not previously reimbursed by" the client. In other words, the retainer agreement assumes what is typical: the law firm represents the client to the point of settlement or judgment, funds recovered go to the law firm, and the law firm then disburses the funds—minus its one-third fee and expenses—to the client.

The seventh and eighth paragraphs not only reflect this understanding, they demonstrate that the parties expressly contemplated a disagreement over settlement valuation and the possibility of a voluntary withdrawal. The seventh paragraph allows Stowman to withdraw after reasonable investigation if the firm determines "that it is not feasible to prosecute such claim." The eighth paragraph makes clear that "[n]o settlement of this claim may be made without first securing the consent of" the client. Neither paragraph includes any provision for Stowman to receive a fee if it voluntarily withdraws before settlement or judgment. Both paragraphs, read together with the remainder of the retainer agreement, imply exactly the opposite: if there is no recovery *by Stowman*, Stowman receives no fee. This is how the typical contingency-fee agreement works.[1]

---

[1] The court asserts that I ignore the possibility that an attorney may be required to withdraw from some cases for ethical reasons, which would require the attorney to either forego a fee or continue to represent a client notwithstanding the duty to withdraw. As to

(Footnote continued on next page.)

The final paragraph, entitled "Other," contains blank lines for any special understandings between attorney and client. The "Other" paragraph is blank. At the bottom of the form, Jeffrey Stowman "accept[ed] employment on the above terms on behalf of Stowman Law Office."

On its face, the retainer agreement is complete: there are no missing, material terms. The agreement lays out precisely when and how Stowman receives a fee. It even covers the circumstances, akin to the situation here, when the client refuses to settle or the firm concludes that it is not "feasible" to prosecute the claim. The retainer agreement thus presents a garden-variety task of contractual interpretation: we must ascertain the intent of the parties through the language of their written contract. *See Savela v. City of Duluth*, 806 N.W.2d 793, 796 (Minn. 2011); *see also Downing v. Ind. Sch. Dist. No. 9*, 207 Minn. 292, 298, 291 N.W. 613, 616 (1940) (ascertaining intent is the "cardinal rule" in the interpretation of contracts). The retainer agreement, like most contracts, does not explicitly address every possible contingency. But it is sufficiently clear to ascertain

---

(Footnote continues from previous page.)
the former possibility, a contingency-fee agreement already accounts for the risk that an attorney will not receive a fee despite doing substantial work on the case. In assessing their risk, attorneys are capable of accounting for the possibility that either they or the client will terminate the representation before the matter is finally resolved. Indeed, contingency-fee agreements already include a "risk premium." *Cf. Gisbrecht v. Barnhart*, 535 U.S. 789, 810 (2002) (Scalia, J., dissenting) (discussing the idea of a "risk premium" in contingency-fee agreements). Regarding the latter possibility, attorneys must adhere to their ethical obligations, even at some financial cost to themselves, and in interpreting contracts for legal services, we should not assume that attorneys will disregard those obligations.

intent: Stowman is not entitled to a fee when it withdraws voluntarily before settlement or judgment.

The court apparently disagrees, presenting its holding as applicable when an "attorney's recovery in the event of withdrawal for good cause is not . . . addressed in the contract." The court does not explain why the retainer agreement in this case is incomplete, so it never goes the extra step of squaring its interpretation with other black-letter principles of contract interpretation. Those principles, once applied, also suggest that Stowman is not entitled to a fee.

First, we must read and interpret contracts, like statutes, as a whole, not as separate isolated provisions. *See Halla Nursery, Inc. v. City of Chanhassen*, 781 N.W.2d 880, 884-85 (Minn. 2010). In addition to the other provisions discussed above, the fourth paragraph of the retainer agreement says that, in the event Stowman recovers nothing for the client, the client must still pay costs. Specifically, the fourth paragraph states that "[a]ctual costs, if any, advanced by [Stowman] . . . will be paid by the undersigned *regardless of the outcome*." (Emphasis added.) Significantly, there is no analogous provision regarding fees accompanying the term in the seventh paragraph allowing Stowman to withdraw voluntarily, which strongly suggests that Stowman would be entitled only to costs, if anything, from the client in the event of a voluntary withdrawal.

Second, even if the retainer agreement were ambiguous regarding its application to this situation, "it is axiomatic that the contract will be construed against the drafter." *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn. 1979). Here, Stowman drafted the contract.

Third, any ambiguity in a contract may be clarified by reference to parol evidence. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 832 (Minn. 2012); *Betlach v. Wayzata Condo.*, 281 N.W.2d 328, 330 (Minn. 1979) ("[A]ll evidence offered to clarify or explain ambiguous terms . . . should be admitted, as long as it is not for the purpose of varying terms whose meaning is plain."). Here, the communications between Stowman and the client included a statement, once found on Stowman's website, that "[t]o give the best possible service, we do NOT charge a fee unless *we* recover money for you, our client." (Emphasis added.) If there were any doubt about whether Stowman was entitled to a fee in the situation presented here, this statement indicates it was not.

Finally, as the court notes, this is not an ordinary commercial contract; it is an agreement between an attorney and a client. I understand the point made by the court that different concerns govern attorney-client relationships. However, I believe that our obligation to regulate the practice of law, along with attorneys' ethical obligations toward their clients, compels a rule that is *more* solicitous of client interests, not less.[2]

Several provisions of the Minnesota Rules of Professional Conduct support my view. One rule makes clear that the "basis or rate of the fee . . . shall be communicated to the client . . . ." Minn. R. Prof. Conduct 1.5(b). In other words, the burden to communicate clearly, in a way that the client can understand, is on the attorney. The attorney has an even greater responsibility when fees are contingent on the outcome of

---

[2] These considerations also cause me to question whether the court's rule is consistent with precedent allowing recovery for unjust enrichment only when one party confers a benefit on another party and "retention of the benefit is not legally justifiable." *Caldas*, 820 N.W.2d at 838.

the matter. Not only must the agreement be in "a writing signed by the client," it must "state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal . . . ." Minn. R. Prof. Conduct 1.5(c). If there is ambiguity in the written contingency-fee agreement on when and how to calculate fees, then the attorney has neither clearly "stated the method by which the fee is to be determined" nor the percentage that "shall accrue." This failure of communication cuts against the attorney's right to collect a fee, not against the client.

In this case, both general principles of contract interpretation and the special concern we have shown for clients through our rules should lead us to interpret and apply the retainer agreement according to its plain meaning. For these reasons, we need not reach the question of whether the Stowman firm's withdrawal was not "justifiable," as the court of appeals decided, or without "good cause," as the court decides. I would decide the case based on basic principles of contract interpretation, and conclude that, by the terms of the retainer agreement, Stowman is not entitled to a fee upon voluntary withdrawal. Accordingly, I respectfully concur only in the result.


LILLEHAUG, Justice (concurring).

I join in the concurrence of Justice Stras.


C-6