# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2451

_____

Padden Law Firm, PLLC

*Movant - Appellant*

Bridgette Trice, as trustee for the heirs and next of kin of Devyn Bolton, deceased

*Plaintiff - Appellee*

Koua Fong Lee; Panghoua Moua; Nhia Koua Lee; Nong Lee; American Family Mutual Insurance Company, as subrogee of Koua Fong Lee; Jemee Lee, a minor child; State of Minnesota, Department of Human Services; UCare Minnesota

*Intervenor Plaintiffs*

v.

Toyota Motor Corporation; Toyota Motor North America, Inc., a California corporation; Calty Design Research, Inc.; Toyota Motor Engineering and Manufacturing North America, Inc., a Kentucky corporation; Toyota Motor Manufacturing, Kentucky, Inc.; Toyota Motor Sales, USA, Inc., a California corporation

*Defendants*

Robert Bolton

*Claimant*

Napoli Shkolnik PLLC

*Movant*

_____

No. 18-2576
_____

Napoli Shkolnik PLLC

*Movant*

Padden Law Firm, PLLC

*Movant - Appellant*

Quincy Ray Adams

*Plaintiff - Appellee*

Medica Health Plans

*Intervenor Plaintiff*

v.

Toyota Motor Corporation, a Japanese corporation; Toyota Motor Engineering and Manufacturing North America, Inc., a Kentucky corporation; Toyota Motor Manufacturing, Kentucky, Inc., a Kentucky corporation; Toyota Motor North America, Inc., a California corporation; Toyota Motor Sales, USA, Inc., a California corporation; Calty Design Research, Inc., a California corporation

*Defendant*s
_____

Appeals from United States District Court
for the District of Minnesota
_____

Submitted: October 16, 2019
Filed: April 28, 2020
_____

Before COLLOTON, BEAM, and KELLY, Circuit Judges.
_____

BEAM, Circuit Judge.

The Padden Law Firm appeals the district court's[1] decision to alter the distribution of attorney's fees set forth in a contingency fee sharing agreement between two law firms in a products liability case. We affirm.

I.      BACKGROUND

In February 2015, a federal jury in Minnesota found that a product defect in a 1996 Toyota Camry directly caused the 2006 car accident that permanently injured Quincy Adams and rendered Bridgette Trice's daughter, six-year-old Devyn Bolton, a quadriplegic. Devyn died from those injuries in 2007. On appeal, this court affirmed the jury's finding of liability but remanded the judgment amounts to the district court for further consideration. Adams v. Toyota Motor Corp., 867 F.3d 903 (8th Cir. 2017). Thereafter, the parties stipulated to judgment amounts of $5,543,453.22 for Trice and $1,717,384.82 for Adams (collectively, "Plaintiffs").

Plaintiffs' jury awards were subject to a 40% contingency fee in favor of several law firms that represented them over the lengthy course of the litigation, and a dispute remains over the allocation of 45% of that contingency fee, which totals

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

-3-

$997,090.83 in the Trice case and $308,885.68 in the Adams case. Three firms are vying for a portion of that fee.

In early 2010, Plaintiffs first retained the Padden Firm, Michael Padden,[2] principal, to represent them. Soon after, the Padden Firm requested and obtained the assistance of the White Firm to serve as additional counsel. In April 2010, another law firm was added, the Chesley Firm, but ultimately this firm stepped away in 2012, as Mr. Chesley was facing disbarment. Chesley recommended hiring the Napoli Firm as lead counsel, and the Plaintiffs consented to this decision. However, the Napoli Firm was ultimately terminated as counsel.[3] Following termination of the Napoli Firm as lead counsel, Plaintiffs retained Markovits, Stock & DeMarco, LLC (MSD) to assume the role of lead counsel. At this point, in April 2014, Plaintiffs signed a new retention agreement with the various law firms that (a) reaffirmed the 40% contingency fee structure that had been in place since the inception; (b) directed MSD to serve as lead litigation counsel should the case go to trial; and (c) provided for an allocation of the 40% contingent fee as follows: 55% to MSD, 30% to the Padden Firm, and 15% to the White Firm. Nonetheless, as the case went to trial, the White Firm lifted a much heavier oar than the Padden Firm in helping MSD with trial preparation, pretrial motion practice, and actual trial participation. In fact, neither Padden, nor anyone else from the Padden Firm attended trial. In February 2015, shortly after the jury verdict, MSD sent the Plaintiffs a letter somewhat modifying the April 2014 agreement, specifying that MSD was to act as sole lead counsel going

---

[2]When referring to the Padden Firm, we will designate it as such; a reference to "Padden" is a reference to the individual, Michael Padden.

[3]The Napoli Firm is one of the three firms vying for a portion of the contingency fee, and is the appellant in an appeal regarding a *quantum meruit* claim for fees. We recently affirmed the district court's holding that the Napoli Firm was not entitled to any fee. Napoli Shkolnik PLLC v. Toyota Motor Corp., No. 18-2172, 2020 WL 1814269 (8th Cir. Apr. 10, 2020).

forward, and authorized MSD to make equitable adjustments to the fees of MSD, the White Firm, and the Padden Firm to account for work performed post-trial and on appeal.

The Plaintiffs brought the current motion, as relevant, asking the district court to redistribute the attorney's fees between the Padden and White Firms, asserting that the remaining 45% of the contingency fee should be altered by paying 30% to the White Firm and 15% to the Padden Firm–the opposite of what was provided for in the April 2014 agreement. Plaintiffs contend that this allocation more accurately reflects the actual contributions of each firm during all stages of litigation.

The district court made explicit findings about the proportional contributions and activities of the Padden Firm throughout the litigation. The district court observed that over the many years of its overseeing this litigation, the Padden Firm was minimally involved in the substantive work on the cases, whereas the White Firm expended substantial time and effort. The court stated that the Padden Firm only "nominally participated in the pre-trial litigation motion practice or strategy, did not participate in preparing the case for trial, did not participate in or attend the trial, did not contact Plaintiffs during trial, did not participate in the post-trial and appellate stages of the cases, did not work with Plaintiffs to finalize the distribution statements, and did not contribute to the financing of this case." On the other hand, the court found that the White Firm extensively assisted MSD in getting up to speed after the Napoli Firm was terminated, and helped prepare motions in limine, jury instructions, assisted with legal issues at trial and post-trial, as well as provided appellate support. Accordingly, the court found that the fee division in the April 2014 agreement should "yield to a more fair reflection of the work actually performed, which is 15% to the Padden Firm and 30% to the White Firm."

In arriving at its decision, the district court rejected the Padden Firm's arguments that the time Padden spent orchestrating media coverage for the case should have been taken into account, because the court found that generating media attention was not a substantive legal contribution. The Padden Firm also argued that it should get credit for hiring a quality expert car mechanic. The district court agreed that while Padden "deserve[d] credit for hiring a competent mechanic, this was not major, substantive legal work." Finally, Padden posited that the Plaintiffs did not like him and that is why they were bringing the current motion (and also why they switched the distributions from 30% to 15% in the February 2015 post-trial agreement). However, the district court rejected that argument because of its observations of the Plaintiffs and the various attorneys throughout the course of the trial. Ultimately, the district court concluded that Plaintiffs' proposed fee allocation of 15% to the Padden Firm and 30% to the White Firm was appropriate, citing the Minnesota Rules of Professional Conduct, Minnesota case law, and primarily the actual workload between the various law firms at all stages of the litigation.

In a post-trial motion pursuant to Federal Rules of Civil Procedure 52(b) and 59(e), the Padden Firm argued to the district court, for the first time, that it was jointly responsible for the case and therefore the April 2014 division of fees agreement should prevail. In ruling on the post-trial motion, the district court noted that proportionality, but not the joint responsibility argument, was previously raised and found the joint responsibility argument to be waived. Alternatively, the court held that even considering the merits of the joint responsibility argument, the Padden Firm would not prevail under that theory because the Padden firm did not assume joint financial responsibility for litigation expenses or ethical responsibility for the case. The Padden Firm appeals, arguing it was entitled to 30% of the contingent fee based upon the April 2014 agreement because it did that amount of work, proportionally speaking, on the case, and that it is entitled to a fee because it was jointly responsible for the case.

## II. DISCUSSION

Minnesota substantive law applies in this dispute as a result of diversity jurisdiction. Qwest Commc'ns Co. v. Free Conferencing Corp., 905 F.3d 1068, 1074 (8th Cir. 2018). We review the district court's application of state law de novo. Bjornestad v. Progressive N. Ins. Co., 664 F.3d 1195, 1198 (8th Cir. 2011). "We review de novo the legal issues related to the award of attorney fees and costs and review for abuse of discretion the actual award of attorney fees and costs." Thompson v. Wal-Mart Stores, Inc., 472 F.3d 515, 516 (8th Cir. 2006).

The Minnesota Supreme Court has specified that the attorney-client relationship differs from other contractual relationships, and thus different legal principles are applied when interpreting and enforcing attorney-fee agreements. In re Petition for Distrib. of Attorney's Fees Between Stowman Law Firm, P.A. & Lori Peterson Law Firm, 870 N.W.2d 755, 760 (Minn. 2015). The attorney-client relationship, even if documented by a written agreement, is subject to ethical and professional court rules, and ordinary contract principles must yield to these ethical standards. Id.

The ethical rules for dividing fees among lawyers in different firms are set forth in Minnesota Rule of Professional Conduct 1.5(e), which provides:

> A division of a fee between lawyers who are not in the same firm may be made only if (1) the division is **in proportion** to the services performed by each lawyer or each lawyer assumes **joint responsibility** for the representation; (2) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and (3) the total fee is reasonable.

Minn. R. Prof'l Conduct 1.5(e) (emphasis added). To be deemed enforceable and consistent with public policy, fee-splitting agreements between attorneys of different

firms must comply with all requirements of this rule. <u>Christensen v. Eggen</u>, 577 N.W.2d 221, 225 (Minn. 1998).

At the outset we must discern which issues have been preserved for appeal. The Padden Firm made a proportionality argument to the district court, but on appeal, does not meaningfully raise proportionality until its reply brief. On the other hand, the Padden Firm did not raise the joint responsibility argument to the district court until its post-trial motion. The district court held that because the issue had not previously been raised it was waived, but alternatively held that a joint responsibility theory would not prevail on the merits either. Nonetheless, this joint responsibility theory is the theory primarily argued to us on appeal in the opening brief. As we may affirm on any ground supported by the record, we will assume for the sake of analysis that both the proportionality and joint responsibility arguments as they pertain to the 2014[4] fee-splitting agreement are properly before us.

## A.    Proportionality

As stated in the proportionality prong of the rule, a fee-splitting agreement between lawyers from different law firms is only ethical under Rule 1.5(e) if it ultimately reflects the proportion of services that was actually performed by the lawyers splitting the fee. <u>See</u> Minn. R. Prof'l Conduct 1.5(e)(1). As to the services performed, the Padden Firm argues that it did enough work compared to the White Firm to garner 30% of the fee, rather than the 15% awarded by the district court. It cites as evidence of this work: that it procured the clients' case to begin with, that it

---

[4]While the new agreement executed in February 2015 is interesting in that it reflects the will of the Plaintiffs and the MSD firm from that point, it is not particularly relevant in our analysis because it only pertains to work performed post-trial and on appeal. The bulk of, or perhaps all of, the fee that is at stake in this appeal was generated before the 2015 agreement. Nor did the district court rely upon the 2015 agreement in making its decision.

secured a key expert witness, and that it worked behind the scenes to drum up publicity for the case. The Plaintiffs do not dispute any of those facts; they simply argue that proportionally speaking, this is far less legal work than was performed by the White Firm, which participated in pretrial motion practice and actively participated in the substantive work of the trial. A member of the Padden Firm did not even attend trial. The factual findings by the district court support its conclusion that the proper distribution of fees should be 15% to the Padden Firm, and 30% to the White Firm. The Padden Firm does not take umbrage with the district court's factual findings. Nor does the Padden Firm disagree with the proportionality theory, as we understand its argument; it simply argues that this theory should not deny it the benefit of its original bargain to receive 30%.

Instead, the Padden Firm continues to argue that the agreement should govern, and points out that <u>Stowman</u>, cited by the district court,[5] is distinguishable because the firm in that case withdrew from representing the plaintiff, 870 N.W.2d at 757, whereas the Padden Firm did not withdraw in the instant case. Instead, the Padden Firm argues the case is more like <u>Matter of Caswell</u>, 905 N.W.2d 507 (Minn. Ct. App. 2017). In <u>Caswell</u>, a client disagreed with the amount of fees the law firm was set to receive, pursuant to a contingency fee agreement, after simply settling a personal injury case for the insurance policy limits. The client tried to avoid the agreement by firing the law firm. The Minnesota Court of Appeals enforced the contingency fee agreement and found that there was no reason for the terms of the agreement not to be enforced. <u>Id.</u> at 509-10. We find <u>Caswell</u> is distinguishable, however, as there is no issue in that case about the division of labor between two law firms; it simply involves a client who was remorseful about agreeing to a generous fee agreement for

---

[5]The district court cited <u>Stowman</u> only for the legal proposition that attorney fee agreements are unique contracts governed by other principles than simply contract law, including the Rules of Professional Conduct.

a relatively simple case.  Caswell does not involve the issue of proportionality as contemplated by Rule 1.5(e)(1).

Here, the district court found that the Padden Firm did not do nearly as much work as the White Firm, let alone double the work.  These findings are not clearly erroneous and are in fact supported by the record.  The district court did not preclude the Padden Firm from obtaining any fee; it just found, upon the Plaintiffs' request, that the 30% fee should be awarded to the White Firm, which performed a proportionally larger share of work on the case.   We understand that as a public policy matter, it is unusual for the courts to revise fee-sharing agreements between lawyers, negotiated at arm's length, based upon the perceived fairness of the agreements.  However, this was not a typical personal injury litigation matter, which the district court presided over for more than seven years.  We do not lightly disregard an arm's-length fee-sharing contract, but in the unusual circumstances of this case, and reviewing the matter in light of the construct of the Minnesota Code of Professional Conduct as we must, we find that the district court correctly analyzed the proportionality prong of Rule 1.5(e) and did not abuse its discretion in altering the fee agreement and awarding the Padden Firm 15% of the disputed fee.  See, e.g., Dragelevich v. Kohn, Milstein, Cohen & Hausfeld, 755 F. Supp. 189, 192-93 (N.D. Ohio 1990) (surveying laws of various states and noting that the "majority view" seemed to be that the division of fees among counsel must be proportional to the work actually performed, despite the existence of an agreement that delineates a firm will get a specific percentage).

### B.    Joint Responsibility

As noted above, the Padden Firm also argues on appeal that the "joint responsibility" portion of Rule 1.5(e)(1) should govern to justify its receipt of 30% of the fee.  The Padden Firm's primary evidence of joint responsibility is that its name was on the pleadings, and counsel for the Padden Firm also asserted at oral argument

that it would be financially responsible to pay any fee that the Napoli Firm might be awarded in its *quantum meruit* case, or might be joined in any malpractice case brought against the Napoli Firm. As noted, the district court held that the Padden Firm did not take either financial or ethical responsibility for the case.

The Padden Firm admits that Minnesota cases have not clearly established what constitutes "joint responsibility." However, comments to the Minnesota rules and cases from other jurisdictions follow the district court's formulation that joint responsibility generally means taking joint financial and ethical responsibility for the case with the other firms who are parties to the fee-split agreement. See Minn. Rule Prof'l Conduct 1.5(e)(1) cmt. n.7 ("Joint responsibility for the representation entails financial and ethical responsibility for the representation as if the lawyers were associated in a partnership."). The Padden Firm cites cases from Georgia and New York wherein the concept was likened to joint and several liability, and assert that these courts found that as long as the attorneys participated in the case, the agreement for fees should stand as written. See Nickerson v. Holloway, 469 S.E.2d 209, 210 (Ga. Ct. App. 1996) (holding that it "agree[d] with those courts which have held that as long as both attorneys have done some work on the case beyond signing and referring the client, the courts will not engage in the cumbersome task of evaluating after the fact the relative contributions made by the bickering attorneys"); Aiello v. Adar, 750 N.Y.S.2d 457, 464-66 (N.Y. Sup. Ct. 2002) (holding that a 50-50 fee-sharing agreement which explicitly stated that division of fees would *not* be in proportion to the work performed, would still be enforced because both attorneys assumed joint financial and ethical responsibility for the case).

We are not persuaded by these arguments. First, in the New York case, the agreement spelled out that proportionality would not be considered. No such clause was included in the April 2014 agreement at issue here. And while the Georgia court referred to bickering attorneys, it is the clients in this matter that instigated the current motion before the district court. Thus, we agree with the district court that the test

-11-

for joint responsibility is taking financial and ethical responsibility for the case. Although the Padden Firm participated with regard to publicity and by initially securing the clients, the district court correctly found that it "assumed no financial responsibility for litigation expenses, which exceeded $100,000 in these cases." The Napoli case has been resolved with no fee award for which the Padden Firm alleges it would have been responsible. Napoli, 2020 WL 1814269, at *3.[6] Although the Padden Firm asserts that it took ethical responsibility for the case with regard to the Napoli Firm problems, the record indicates that all attorneys, including the White and MSD firms, worked diligently to get information from the Napoli Firm during the time Napoli was lead counsel and after the Napoli Firm was discharged as lead counsel. Further, joint responsibility seems to require both the financial and ethical components, and the financial element is clearly lacking. Thus, the district court did not err in finding that the Padden Firm did not take financial and ethical responsibility for the case within the meaning of Rule 1.5(e).

## III.  CONCLUSION

Because the usual rules of contract construction must bend to the Minnesota Rules of Professional Conduct, Stowman, 870 N.W.2d at 760, the district court did not err in revising the fee agreement to reflect the proportional reality of the attorney work performed during this litigation. The joint responsibility doctrine does not change that outcome in this particular case. Accordingly, we affirm.

_____

---

[6]Even if Napoli had been awarded a fee in *quantum meruit* to be paid by the Padden and White firms, we doubt this would have indicated joint financial responsibility for the case, given all the other litigation fees that the Padden Firm did not advance in this protracted personal injury litigation against a major international corporation.