CHUTICH, Justice.
This case requires us to clarify the proper method for calculating the quantum meruit[1] value of an attorney's services when a client terminates the contingent-fee agreement before a matter concludes. Respondent API, Inc. Asbestos Settlement Trust (API Trust), retained appellant Faricy Law Firm, P.A. (Faricy), under a contingent-fee agreement to assist with asbestos litigation. Faricy represented the predecessor to API Trust and then API Trust for about 10 years and was involved in pursuing several claims. Two months before settling a claim upon which Faricy had worked, API Trust discharged Faricy.
Minnesota law prohibits a discharged contingent-fee lawyer from receiving the contingent fee as a contract remedy, instead allowing recovery only of the reasonable value of services under a theory of quantum meruit. See In re Petition for Distribution of Attorney's Fees Between Stowman Law Firm, P.A. , 870 N.W.2d 755, 761 (Minn. 2015) ; Lawler v. Dunn , 145 Minn. 281, 176 N.W. 989, 990 (1920). The district court concluded that Faricy had failed to prove the value of the services that it had provided and dismissed Faricy's attempt to recover a portion of API Trust's settlement funds. The court of appeals reversed and remanded, concluding that the district court had applied the wrong test for determining quantum meruit. It provided a set of factors for the district court to consider on remand. Faricy seeks review on the issue of whether the contingent-fee agreement can be considered as a factor when determining the reasonable value of services in quantum meruit, and API Trust seeks cross-review regarding the amount of evidence required to prove quantum meruit. We granted review on both issues.
FACTS
For 10 years, Faricy represented API Trust and its predecessor, API, in suits against insurance carriers that refused to indemnify API for asbestos-related verdicts and settlements. The insurance carriers claimed that API had exhausted the aggregate limits under their respective *655 policies, but Faricy advised API to pursue coverage from the carriers because API's policies had no aggregate limits. Under an agreement providing for payment to Faricy on an hourly-fee basis, API first retained Faricy in 2002 to pursue these asbestos-related insurance-coverage claims. In 2004, Faricy and API entered into a second retainer agreement, which provided for a reduced hourly rate along with a 14% contingency fee. Soon thereafter, API filed for Chapter 11 bankruptcy, leading to the formation of API Trust, which continues to handle the remaining asbestos-related claims and insurance-coverage litigation through its trustee. From 2002 to 2009, Faricy represented API and API Trust on various asbestos-related claims, and API Trust paid Faricy for all work completed before January 2009.
In 2004, while working under the first retainer agreement, Faricy filed an insurance claim on behalf of API Trust with Home Liquidator. The dispute here concerns Faricy's work on the Home Liquidator claim after January 2009.
At API Trust's behest, Faricy and API Trust entered into a third retainer agreement in January 2009; this agreement, which replaced the 2004 agreement, had no hourly fee and a 1/3 contingent fee. The agreement allowed API Trust to terminate Faricy's representation for any reason and stated that, in the event of termination, "the Firm shall be entitled to receive such compensation as determined by Minnesota law under the circumstances of this engagement."
From January 2009 to August 2012, Faricy represented API Trust on the Home Liquidator claim. Faricy's attorneys drafted letters, conducted legal research, and advised and strategized with API Trust concerning settlement negotiations with Home Liquidator.
In June 2012, while Faricy was still representing API Trust, Home Liquidator extended an $11 million settlement offer. On August 31, 2012, API Trust terminated Faricy's representation and requested a bill for the services that Faricy had provided on Home Liquidator and one other matter.
Faricy responded in late September, requesting "33-1/3% of any Insurance Recovery against Home Insurance Company and the Home Liquidator." After receiving this letter, the trustee of API Trust discussed Faricy's request with his colleagues, the API Trust advisor and legal representative, admitting in an email that he thought that Faricy "is entitled to a quantum meruit fee for time spent." The trustee also testified at trial that he would have considered paying Faricy the reasonable value of its services had Faricy actually submitted a bill that reflected that it had "actually done something of value for the trust" and showed the time it had spent on that work. Despite this acknowledgment that Faricy would be entitled to the reasonable value of his services, the trustee did not respond to Faricy's request for the contingent fee because he did not want Faricy to file a lien on the Home Liquidator recovery.
In November 2012, just over two months after API Trust terminated Faricy's representation, API Trust settled the Home Liquidator claim for $21.5 million. Two years later, Faricy learned that Home Liquidator would begin making settlement payments to API Trust. Faricy again wrote to API Trust and requested 1/3 of the payments, based on the 2009 contingent-fee agreement. In December 2014, API Trust informed Faricy for the first time that it did not consider the Home Liquidator claim to be within the scope of the 2009 agreement and that it refused to pay Faricy any amount that reflected the contingent fee or any fee. Although API
*656 Trust refused to pay Faricy for any work on the Home Liquidator claim, the trustee received $41,000 for work completed on the Home Liquidator claim.
In June 2015, Faricy filed an attorney's lien under Minn. Stat. § 481.13 (2016), asserting entitlement to 1/3 of all received and pending payments from Home Liquidator to API Trust. Faricy then sought to enforce the lien. Instead of awarding the contingent fee that Faricy had requested, the district court considered whether Faricy had proven a claim in quantum meruit, which would require API Trust to compensate Faricy for the reasonable value of the services that it had provided before API Trust terminated Faricy's representation.
API Trust contended in district court that the contingent-fee agreement did not cover the work that Faricy did on the Home Liquidator claim, but the district court rejected that argument. The district court found that "Faricy and the trustee [for API Trust] worked together to set the stage for an excellent outcome consistent with the settlement objective that was identified entering the negotiations. Millions of dollars were recovered with the possibility of more in the future." It also found that "the events leading to the settlement between API Trust and the Home Liquidator lead to the reasonable inference that Faricy's work product, advice, and recommended negotiation strategy led to the settlement in significant part ."[2] (Emphasis added.) Despite this recognition of the value that Faricy had provided to API Trust, the district court held that Faricy had failed to provide sufficient evidence to allow it to calculate the value of Faricy's services to API Trust.
To determine the quantum meruit value of Faricy's services, the district court attempted to use two different methods of calculation: (1) the lodestar method, which focuses on evidence of the hours worked, see Specialized Tours, Inc. v. Hagen , 392 N.W.2d 520, 542 (Minn. 1986) (adopting the United States Supreme Court's lodestar approach); see also Minn. Gen. R. Prac. 119.02 (outlining a standard procedure for considering attorney-fee requests that are to be determined under the lodestar method); and (2) a factor-based method developed by the court of appeals, see In re L-tryptophan Cases , 518 N.W.2d 616, 621 (Minn. App. 1994). Although the district court "implored Faricy" to provide more evidence of the value that its legal work conferred on API Trust, the lack of evidence of the hours that Faricy had worked stymied the district court's efforts. The court noted that it found "no basis for the court to arrive at a non-arbitrary or non-speculative reasonable value." The district court concluded that, no matter the calculation or approach, "Faricy failed to carry its burden of proving the reasonable value of its work in connection with the Home Liquidator claim." Accordingly, the district court dismissed Faricy's petition and extinguished Faricy's lien without awarding Faricy any compensation for its work.
On appeal, the court of appeals concluded that the district court erred in deciding that Faricy had not provided enough evidence to calculate a quantum meruit fee. Faricy Law Firm, P.A. v. API, Inc. Asbestos Settlement Tr. , A16-1539, 2017 WL 1832415, at *4 (Minn. App. May 8, 2017). According to the court of appeals, "it was erroneous for the district court to effectively rule that Faricy [was] entitled to nothing, despite correctly finding that Faricy *657 performed some uncompensated work on the Home Liquidator claim for which a promise to pay was implied." Id . The court determined that "the findings of the district court and the evidence do not support a decision that results in no compensation." Id . at *4.
The court of appeals reversed the district court's decision and remanded to the district court to engage in a quantum meruit analysis by applying a set of factors that it listed in the opinion. Id . The court of appeals did not mention consideration of the contingent-fee agreement. See id. We granted review on the issues of how to calculate a quantum meruit award in contingent-fee cases and whether the remand by the court of appeals was appropriate, given the amount of evidence submitted to show the value of the services that Faricy provided to API Trust.
ANALYSIS
This case concerns the method for calculating an award for the equitable remedy of quantum meruit. We review a district court's decision of whether to award equitable relief for an abuse of discretion. Melrose Gates, LLC v. Moua , 875 N.W.2d 814, 819 (Minn. 2016). Under this standard, we may nonetheless "overrule the district court when the court's ruling is based on an erroneous view of the law." Citizens State Bank v. Raven Trading Partners , Inc. , 786 N.W.2d 274, 278 (Minn. 2010). Specifically, this case requires us to determine the proper method for calculating the quantum meruit fee owed to an attorney who is discharged before the contingency in the contingent-fee agreement occurs, which is a legal question that we review de novo. See Thomas A. Foster & Assocs. v. Paulson , 699 N.W.2d 1, 4 (Minn. App. 2005) ("Although the reasonable value of attorney fees is a question of fact, ... when considering whether the district court employed the proper method to calculate the amount of an attorney lien, we undertake a de novo review." (citation omitted) ).
I.
A discharged attorney may file a lien to recover attorney fees. Minn. Stat. § 481.13, subd. 1(a)-(c). But a discharged attorney may not sue for breach of contract damages because the client always has an implied right to terminate the attorney-client relationship. Stowman , 870 N.W.2d at 761 ; see Lawler , 176 N.W. at 990 ("If the client has this right as an implied condition of the contract under the law, it follows as a natural consequence that he cannot be compelled to pay damages for exercising that right which his contract gives him.").
This same rule prevents a contingent-fee attorney from recovering the contingent fee under the terms of the contract if the contingency occurred after the client terminated the attorney's representation. See Stowman , 870 N.W.2d at 761 ("We have applied the Lawler quantum meruit rule to a contingent-fee agreement."). Nevertheless, a discharged contingent-fee attorney should not necessarily walk away empty-handed.
The discharged attorney is instead entitled to compensation for the reasonable value of the services under the equitable theory of quantum meruit. Id. ("[W]hile a court will not penalize a client for an exercise of the right to terminate a representation agreement and settle a matter without the attorney's consultation or consent, when the client does so the measure of relief of the attorney is the reasonable value of his services." (citation omitted) (internal quotation marks omitted) ). Quantum meruit is "restitution for the value of a benefit conferred in the absence of a contract under a theory of *658 unjust enrichment." Id. at 759 n.2. Because quantum meruit is "a claim in equity," id. , the calculation of the reasonable value of services is distinct from the hours-based calculation in non-equitable contexts. See, e.g. , Minn. Gen. R. Prac. 119 (outlining a standard procedure for calculating attorney fees when using the lodestar method); Specialized Tours, Inc. v. Hagen , 392 N.W.2d 520, 542 (Minn. 1986) (adopting the United States Supreme Court's lodestar approach). To prove a claim in quantum meruit, the discharged attorney must prove "(1) that the services were rendered; (2) under circumstances from which a promise to pay for them should be implied; and (3) their value." High v. Supreme Lodge of World, Loyal Order of Moose , 210 Minn. 471, 298 N.W. 723, 725 (1941) (quoting Ertsgaard v. Bowen , 183 Minn. 339, 237 N.W. 1, 1 (1931) ). The dispute here is only over the third element-the value of the attorney's services.
Faricy asserts that (1) a district court should be able to consider the contingent-fee agreement when determining the value of the services for a discharged attorney and (2) this consideration could even result in an award equivalent to the contingent-fee amount in some circumstances. API Trust, on the other hand, contends that a court can never consider a contingent-fee agreement when determining quantum meruit because (1) quantum meruit is limited to the "value conferred," which cannot include the contingent-fee agreement and (2) considering a contingent-fee agreement would violate the rule that a discharged contingent-fee attorney cannot recover the contingent fee. See Stowman , 870 N.W.2d at 761 ; Lawler , 176 N.W. at 990.
On three occasions, the court of appeals has provided a set of factors to consider when calculating the quantum meruit value of a discharged attorney's services involving contingent-fee arrangements. Faricy Law Firm , 2017 WL 1832415, at *4 (applying some of the Ashford factors in a new six-factor test); Ashford v. Interstate Trucking Corp. of Am., Inc. , 524 N.W.2d 500, 504 (Minn. App. 1994) (affirming the district court's consideration of four factors); L-tryptophan , 518 N.W.2d at 621 (providing an eight-factor test). The court of appeals has not, however, explicitly designated the contingent-fee agreement as a factor to be considered. See Faricy Law Firm , 2017 WL 1832415, at *4 (allowing consideration of "circumstances surrounding the discharge" and "[r]isks undertaken in accepting employment on the case"). We agree with the court of appeals that the appropriate analysis here requires considering a set of factors, but we set forth for the first time what the appropriate factors are.
We conclude that district courts should use the following factors to determine the quantum meruit value of a discharged contingent-fee attorney's services:
(1) time and labor required;
(2) nature and difficulty of the responsibility assumed;
(3) amount involved and the results obtained;
(4) fees customarily charged for similar legal services;
(5) experience, reputation, and ability of counsel;
(6) fee arrangement existing between counsel and the client;
(7) contributions of others; and
(8) timing of the termination.
We have chosen these factors because they combine considerations that we have previously applied to determine the value of an attorney's services in other contexts with concerns that are specific to the context of a discharged contingent-fee attorney.
The first six factors derive from the considerations for determining the reasonable *659 value of legal services owed in the condemnation context. See City of Minnetonka v.Carlson , 298 N.W.2d 763, 765, 765 n.1 (Minn. 1980) (interpreting Minn. Stat § 117.195 (1976), which provided that "[w]hen the proceeding [for condemnation] is so dismissed or the same is discontinued by the petitioner, the owner may recover from the petitioner reasonable costs and expenses including attorneys' fees"); State by Head v. Paulson , 290 Minn. 371, 188 N.W.2d 424, 425-26 (1971) (listing six factors to consider when determining "what constitutes the reasonable value of legal services" when interpreting condemnation provision allowing landowners to recover "reasonable costs and expenses including fees of counsel"). In Carlson and Paulson , we approved of the district court's use of these factors to establish an appropriate award of attorney fees.
Similarly, these same factors are considered in the lodestar method, which courts use to evaluate the reasonableness of statutory attorney fees. See Minn. Gen. R. Prac. 119; Hagen , 392 N.W.2d at 542 (adopting the United States Supreme Court's lodestar approach). "Under the lodestar method, a court must first determine the number of hours reasonably expended on the litigation and then multiply those hours by a reasonable hourly rate." Green v. BMW of N. Am., LLC , 826 N.W.2d 530, 536 (Minn. 2013). But this calculus does not end the inquiry; the second step is for courts to consider other "relevant circumstances" bearing on the reasonableness of the fee. Id. at 536 ; see also Hensley v. Eckerhart , 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("There remain other considerations that may lead the district court to adjust the fee upward or downward. ..."). We have described these six factors as "relevant circumstances" that a district court should consider when conducting the second step of the lodestar method. See Green , 826 N.W.2d at 536.
Although the same six factors are used in both contexts, their function in the condemnation context and when applying the lodestar method is distinct. In the condemnation context, the factors are used to establish the amount of fees, which must be reasonable; whereas, under the lodestar method, the factors are applied to evaluate whether a certain amount is reasonable.[3] To determine the reasonable value of services of a discharged contingent-fee attorney in quantum meruit, courts will use the factors to establish the specific award, like in the condemnation cases.
To be sure, this court has not previously applied these six factors in the specific context of a quantum meruit evaluation to determine the reasonable value of services of a discharged contingent-fee attorney. Nonetheless, these six factors include useful measures of the value of the services provided and we have approved of them before to determine "the reasonable value of legal services." Carlson , 298 N.W.2d at 765 ; Paulson , 188 N.W.2d at 426. Despite the different contexts, we have consistently used these factors to assist in determining *660 the value to attribute to an attorney's services.
But the first six factors discussed above are not alone sufficient to determine the value conferred upon the client, particularly in situations where the attorney's representation is terminated after substantially contributing to an ultimately successful case. We have thus added two factors: "the contributions of others" and "the timing of the termination." These factors allow the court to measure the value of the services depending on how the timing of the termination related to the ultimate result and whether the discharged attorney added value compared to other contributors to the case. To demonstrate with extreme examples, the value conferred could vary if the client discharges the attorney after one day of representation compared to moments before settlement occurs. Considering the timing of the termination is especially crucial to prevent a client from avoiding a contingent fee when it becomes apparent that the client will recover or reach a successful result. Similarly, the value of the attorney's services would vary if other entities were involved in the case, either before or after the termination, as the court of appeals encountered in L-tryptophan , 518 N.W.2d at 619, 621 (apportioning the reasonable value of services between two law firms, when the first firm put in a substantial amount of work but was discharged before the client recovered). The unique concerns present when a client discharges a contingent-fee attorney call for more refined considerations, as these two factors address.
Using a set of factors to guide the calculation of quantum meruit is consistent with the way that district courts make other equitable determinations. We have said that "bright-line rules of any kind are in conflict with the basic principles of equity, which by definition require a court to weigh and balance the equities between the parties." RAM Mut. Ins. Co. v. Rohde , 820 N.W.2d 1, 13 (Minn. 2012). Moreover, when the district court makes equitable determinations, it "acts like a fact-finder, weighing all relevant factors and considering the unique facts of each case." Melrose Gates , 875 N.W.2d at 819. Put another way, the "district court must balance the equities of the case" to determine whether the equitable remedy is appropriate. Dakota Cty. HRA v. Blackwell , 602 N.W.2d 243, 244 (Minn. 1999). The set of factors that we adopt today should guide district courts faced with the task of balancing the equities in determining the quantum meruit value of the services of a discharged contingent-fee attorney.[4]
Because we have clarified that the calculation of a quantum-meruit award includes considering the "fee arrangement existing between counsel and client," we agree with the court of appeals that a remand is necessary so that the district court may consider the contingent-fee agreement between Faricy and API Trust, in addition to the other relevant factors that we have identified. The fee agreement "is merely one factor, among a host of others that the district court is to consider in awarding reasonable attorney fees." See Green , 826 N.W.2d at 538.
*661 Our conclusion lies somewhere between the parties' arguments. That district courts may consider the contingent-fee agreement does not mean that Faricy is automatically entitled to its full contingent fee, which would violate the rule that a discharged contingent-fee attorney cannot recover the contingent fee as a remedy for breach of contract. See Stowman , 870 N.W.2d at 761 ; Lawler , 176 N.W. at 990. The contingent fee is instead only one factor among many, so an award for quantum meruit that considers the factors above would not violate Lawler 's rule because it is not "based on" the contingent fee. On the other hand, recognizing that a discharged contingent-fee attorney is entitled to the reasonable value of the attorney's services does not mean, as API Trust asserts, that evidence of the hours worked is the only measure of the value of those services. The calculation of a quantum meruit award is instead an equitable process by which the court determines the reasonable value of services based on a variety of factors, which, ultimately, produces an equitable remedy.
II.
Having addressed Faricy's request to review the quantum meruit calculation, we now turn to API Trust's cross-petition concerning the amount of evidence required to find that a fee is due in quantum meruit. API Trust contends that the court of appeals erred by reversing the district court's decision. See Faricy Law Firm , 2017 WL 1832415, at *2. But the district court based its determination on an erroneous view of the law of quantum meruit, which required reversal. See Citizens State Bank , 786 N.W.2d at 277-78 ("Under an abuse of discretion standard, we may overrule the district court when the court's ruling is based on an erroneous view of the law.").
We have now outlined the set of factors to apply when calculating quantum meruit to ensure that district courts engage in an equitable analysis. The district court applied an incomplete set of factors when determining whether Faricy was entitled to quantum meruit without "balanc[ing] the equities of the case." Dakota Cty. HRA , 602 N.W.2d at 244. To be sure, Faricy provided minimal information regarding the hours it worked. But the district court acknowledged that Faricy provided value to API Trust. API Trust itself acknowledged that it owed Faricy money for its work. Under these circumstances, a result that prevents Faricy from recovering anything is in conflict with the equitable remedy of quantum meruit. See RAM , 820 N.W.2d at 13 ("[B]right-line rules of any kind are in conflict with the basic principles of equity, which by definition require a court to weigh and balance the equities between the parties.").
Because we have adopted a multi-factor test that differs from the methods that the district court employed, we conclude that a remand is appropriate and we do not decide the issue raised by API Trust. On remand, the district court must apply the factors that we enunciate today to balance the equities and to determine the reasonable value of the services that were provided by Faricy. See id. at 13-14 (remanding to the district court to apply the clarified framework). Whether to reopen the record on remand is a decision within the district court's discretion. State ex rel. Swanson v. 3M Co. , 845 N.W.2d 808, 821 (Minn. 2014).
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals as modified.
Affirmed as modified.
THISSEN, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.
*662 DISSENT

Literally, quantum meruit means "as much as he or she had earned." A Dictionary of Modern Legal Usage 724 (2d ed. 1995). In the legal context it means "reasonable value of services," id. , and can apply in two different circumstances. In re Petition for Distribution of Attorney's Fees Between Stowman Law Firm, P.A. , 870 N.W.2d 755, 759 n.2 (Minn. 2015). The claim of quantum meruit at issue here is "a claim in equity as restitution for the value of a benefit conferred in the absence of a contract under a theory of unjust enrichment." Stowman , 870 N.W.2d at 759 n.2.

The district court also recognized that the record supported a conclusion that the trustee did most of the work and thus that the reasonable value of Faricy's work is something less than $41,000.

Minnesota Rule Professional Conduct 1.5 also includes a list of factors used to evaluate whether a lawyer "make[s] an agreement for, charge[s], or collect[s] an unreasonable fee or an unreasonable amount for expenses," similar to the second step in the lodestar test. See Minn. R. Prof. Conduct 1.5. Many of the factors in that rule overlap with the factors we adopt today in the context of determining the reasonable value of services awarded in quantum meruit in contingent-fee arrangements. The substantial overlap shows the utility of the factors that we have chosen. After all, it makes sense that the factors that help a court determine and establish a reasonable fee would be similar to the factors used to evaluate whether an agreed-upon, charged, or collected fee is reasonable.

The dissent focuses on the lack of hours information that Faricy provided as support for the district court's inability "to place a non-speculative value on Faricy's work." But the district court's role was to weigh the equities, which we have now clarified includes considering more factors than the number of hours expended on the case. In addition, the quantum meruit factors set forth today allow the district court to specifically consider the contingent-fee agreement and the timing of the attorney's discharge, factors not captured under the L-tryptophan approach.