# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2172

_____

Napoli Shkolnik PLLC

*Movant - Appellant*

Bridgette Trice, as trustee for the heirs and next of kin of Devyn Bolton, deceased

*Plaintiff - Appellee*

Koua Fong Lee; Panghoua Moua; Nhia Koua Lee; Nong Lee; American Family Mutual Insurance Company, as subrogee of Koua Fong Lee; Jemee Lee, a minor child; State of Minnesota, Department of Human Services; UCare Minnesota

*Intervenor Plaintiffs*

v.

Toyota Motor Corporation, a Japanese corporation; Toyota Motor North America, Inc., a California corporation; Calty Design Research, Inc.; Toyota Motor Engineering and Manufacturing North America, Inc., a Kentucky corporation; Toyota Motor Manufacturing, Kentucky, Inc.; Toyota Motor Sales, USA, Inc.

*Defendants*

Padden Law Firm, PLLC

*Movant*

Robert Bolton

*Claimant*

_____

No. 18-2174
_____

Napoli Shkolnik PLLC

*Movant - Appellant*

Quincy Ray Adams

*Plaintiff - Appellee*

Medica Health Plans

*Intervenor Plaintiff*

v.

Toyota Motor Corporation, a Japanese corporation; Toyota Motor Engineering and Manufacturing North America, Inc., a Kentucky corporation; Toyota Motor Manufacturing, Kentucky, Inc., a Kentucky corporation; Toyota Motor North America, Inc., a California corporation; Toyota Motor Sales, USA, Inc., a California corporation; Calty Design Research, Inc., a California corporation

*Defendant*s

Padden Law Firm, PLLC

*Movant*
_____

Appeals from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: October 16, 2019
Filed: April 10, 2020
_____

Before COLLOTON, BEAM, and KELLY, Circuit Judges.
_____

KELLY, Circuit Judge.

Napoli Shkolnik PLLC (Napoli) appeals from the district court's order denying its *quantum meruit* request for attorney's fees. Because the district court[1] did not abuse its discretion by denying Napoli's request, we affirm.

**I.**

In 2006, a car crash permanently injured Quincy Ray Adams and rendered Bridget Trice's six-year-old daughter a quadriplegic, until she died from her injuries in 2007. In 2010, Trice and Adams retained counsel in their companion cases stemming from this crash. In July 2012, Napoli began work on the cases. It took over as lead counsel shortly thereafter. Napoli soon missed discovery deadlines set by the district court. It did not disclose expert witnesses prior to the deadline, which precluded Trice and Adams's only damages expert, Dr. Harvey Rosen, from testifying at trial. Not only were Trice and Adams not able to use Dr. Rosen at trial, they also forfeited the $4,000 fee they paid him for his work. Napoli also failed to disclose during discovery more than $500,000 in medical expenses, which prevented the jury from considering those expenses as damages.

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

In April 2014, Toyota, one of the defendants, contacted Trice and Adams's local counsel and informed them that Napoli made a settlement demand. Toyota said it would cease settlement discussions because Napoli's offer was "too high to lead to productive negotiations." When Trice and Adams learned of Napoli's settlement demand, which was made without their knowledge or consent, they fired Napoli on April 22, 2014.

Three months later, local counsel asked Napoli to return the case files. Napoli responded that it would "draft a letter outlining any expenses incurred," and that upon "payment of the expenses we will immediately make arrangements to transfer the file." Local counsel told Napoli that they needed the files soon because trial was scheduled for November 2014. Yet Napoli retained the files until local counsel pointed to Minnesota Rule of Professional Conduct 1.16(g), which prohibits a lawyer from conditioning the return of client papers upon the payment of fees.

At trial, the jury found that a defect in a Toyota Camry directly caused the collision. On appeal, this court affirmed the jury's finding of liability but remanded on the judgment amount. The parties subsequently stipulated to judgments of $5,543,453.22 for Trice and $1,717,384.82 for Adams.

Trice's and Adams's recoveries are subject to a 40% contingency fee for the law firms that represented them over the course of the litigation. There is no dispute that the law firm of Markovits, Stock & DeMarco, LLC is entitled to 55% of the overall contingency fee. The parties dispute the proper allocation of the remaining 45% of the contingency fee, which totals $997,090.83 in Trice's case and $308,885.68 in Adams's case. Napoli asserted it is entitled to $112,202.50 in fees under Minnesota's doctrine of *quantum meruit*. Trice and Adams argued Napoli should get nothing because Napoli was terminated for cause and because they were harmed by Napoli's negligent prosecution of their case.

-4-

The district court denied Napoli's request for attorney's fees. It found Napoli was "not entitled to recover under the *quantum meruit* doctrine because [Trice and Adams] did not benefit from its services." Instead, the court explained, Napoli's representation "harmed Plaintiffs due to [its] failure to meet critical discovery and expert disclosure deadlines." The district court further concluded that, even assuming Napoli "had provided some overall value (which it did not), the firm has not established that its requested fees are reasonable." Napoli timely appeals.

## II.

In this diversity action, we apply the substantive law of Minnesota. See Qwest Comms. Co. v. Free Conferencing Corp., 905 F.3d 1068, 1074 (8th Cir. 2018). We review for abuse of discretion the district court's decision whether to award attorney's fees in *quantum meruit*. See Faricy Law Firm, P.A. v. API, Inc. Asbestos Settlement Trust, 912 N.W.2d 652, 657 (Minn. 2018). We review facts determined by the district court, including the reasonable value of attorney's fees, for clear error. In re Distrib. of Attorney's Fees Between Stowman Law Firm, P.A. & Lori Peterson Law Firm, 870 N.W.2d 755, 759 (Minn. 2015).

In Minnesota, a client may terminate an attorney working on a contingency-fee basis at any time, and the attorney cannot recover the contingent fee under the terms of the contract if she is fired before the contingency occurs. Faricy, 912 N.W.2d at 657. But a contingent-fee attorney does not necessarily "walk away empty-handed." Id. Rather, the dismissed attorney is "entitled to compensation for the reasonable value of the services under the equitable theory of *quantum meruit*." Id.

*Quantum meruit* is "restitution for the value of a benefit conferred in the absence of a contract under a theory of unjust enrichment." Id. at 657–58 (citation omitted). Because *quantum meruit* is an equitable claim, "the calculation of the reasonable value of services is distinct from the hours-based calculation" of the

lodestar method.  Id. at 658.  To establish a claim in *quantum meruit*, the discharged attorney must prove: "(1) that the services were rendered; (2) under circumstances from which a promise to pay for them should be implied; and (3) their value."  Id. (citation omitted).  At issue in this case is the third prong: the value of Napoli's legal services.

Minnesota courts have traditionally applied six factors to determine the reasonable value of legal services:

(1) time and labor required;
(2) nature and difficulty of the responsibility assumed;
(3) amount involved and the results obtained;
(4) fees customarily charged for similar legal services;
(5) experience, reputation, and ability of counsel; and
(6) fee arrangement existing between counsel and client.

State by Head v. Paulson, 188 N.W.2d 424, 426 (Minn. 1971).  In June 2018, two months after the district court entered its final judgment in this case, the Supreme Court of Minnesota added two factors specifically for courts determining the value of services provided by a discharged contingency-fee attorney: "(7) contributions of others; and (8) the timing of the termination."  Faricy, 912 N.W.2d at 659–60.

**III.**

The district court acknowledged that the proper amount of a *quantum meruit* claim for attorney's fees is "the reasonable value of the lawyer's services."  The court also recognized that the six Paulson factors were relevant to its analysis and determined that Napoli was not entitled to recover any legal fees.  The district court cited five discrete instances of "harm" that Napoli inflicted on Trice's and Adams's

cases: (1) the inability to introduce $500,000 in medical expenses at trial;[2] (2) the inability to call their only damages expert to testify; (3) Napoli's unauthorized settlement demand, which caused Toyota to end settlement negotiations; (4) Napoli's failure to inform Trice and Adams that a settlement demand had been made and rejected; and (5) Napoli's failure to promptly turn over its case files to local counsel. The district court concluded that "[t]he net effect of [Napoli's] representation caused [Trice and Adams] more harm than good." And because Napoli's "work on the case did not benefit [Trice and Adams], the equitable doctrine of quantum meruit does not require that the Napoli Firm be compensated for its services."

Napoli argues the district court failed to balance all factors and equities as required under Minnesota law when determining the reasonable value of its legal services. In particular, Napoli asserts the court did not consider "the time and labor required," "the nature and difficulty of the responsibility assumed," and its clients' success on the merits. However, the district court expressly considered Napoli's billing records, including the nature of the work done by associates, senior associates, and senior partners. The court also examined the responsibilities undertaken by Napoli, and determined that Napoli did "more harm than good" in carrying them out. It follows, then, that Napoli's legal services did not contribute to any success Trice and Adams obtained on the merits of their cases. We find no error in the district court's analysis.

---

[2]At oral argument, Napoli suggested that it disputes whether it failed to disclose these expenses during discovery. However, Napoli did not make this argument in its opening brief and addressed the issue only in passing in its reply brief. See Parmenter v. Fed. Deposit Ins. Corp., 925 F.2d 1088, 1093 (8th Cir. 1991) ("Generally, this court does not address arguments initially raised in reply briefs."). In any event, Napoli does not seriously contest the district court's finding that its error cost Trice and Adams the opportunity to present to the jury the $500,000 in medical expenses.

Napoli also argues that the district court erred by failing to consider the two additional factors later announced in <u>Faricy</u>. Of course, the district court did not have the benefit of <u>Faricy</u> at the time it considered Napoli's motion. But the district court found that Napoli provided *no* value to Trice and Adams, and Napoli fails to explain how consideration of "the contributions of others" and "the timing of the termination" would alter this finding. The core issue for the district court was the "reasonable value of the legal services" Napoli provided to Trice and Adams, <u>see</u> <u>Paulson</u>, 188 N.W.2d at 426, and Napoli does not challenge the district court's fundamental conclusion that it harmed, rather than helped, Trice and Adams. Consideration of the two additional <u>Faricy</u> factors would not have disturbed that conclusion.[3]

Next, Napoli argues the district court applied an incorrect legal standard to determine the reasonable value of its services. According to Napoli, the district court improperly reviewed its *quantum meruit* claim by using both the lodestar method and the <u>Paulson</u> factors. But Napoli mischaracterizes the district court's analysis. Napoli finds error in the district court's citation to <u>Bailey v. Runyon</u>, 50 F. Supp. 2d. 891, 894 (D. Minn. 1999), a case that involved an application of the lodestar method. But the district court cited <u>Bailey</u> for the proposition that Napoli must demonstrate that its hourly rates are consistent with those customarily charged for similar legal services—a relevant factor under <u>Paulson</u>. The district court considered Napoli's *quantum meruit* claim under the proper legal standard. <u>See</u> <u>Paulson</u>, 188 N.W.2d at 426.

---

[3]Because Napoli does not challenge the district court's conclusion that Napoli harmed, rather than helped, Trice and Adams, we need not consider Napoli's argument that the district court abused its discretion by denying Napoli's requested fees rather than reducing the fee award. The district court was within its discretion to deny the award outright after properly applying the *quantum meruit* standards to determine that Napoli harmed its clients' cases.

Finally, Napoli argues it was inappropriate for the district court to consider allegations of misconduct made against Napoli in its decision to deny the *quantum meruit* request.  The district court did not abuse its discretion by considering these allegations, which included conduct that the district court found harmed Napoli's clients.  Napoli does not challenge the district court's findings that it failed to meet expert disclosure deadlines, that it sent an unauthorized settlement demand that caused Toyota to cease settlement negotiations, and that it failed to promptly return the case files when requested.  With these findings unchallenged and undisturbed, we conclude the district court did not err by considering Napoli's alleged misconduct.  See Thomas A. Foster & Assocs. v. Paulson, 699 N.W.2d 1, 7 (Minn. Ct. App. 2005) (stating that allegations of misconduct are "relevant to calculating attorney's fees").

The judgment of the district court is affirmed.

_____