# ARTHUR JOHN WATERS v. FLORENCE FIEBELKORN.[1]

February 25, 1944.

No. 33,631.

*Carlson & Carlsen,* for appellant.

*Maugridge S. Robb,* for respondent.

[1]Reported in 13 N. W. (2d) 461.

JULIUS J. OLSON, JUSTICE.

Plaintiff's action resulted in a verdict for his adversary, and he appeals from an order denying his motion for a new trial.

The contractual relationship of the parties is that of lessee and lessor, plaintiff being the lessee, defendant the lessor. On February 1, 1941, a written lease was entered into under the terms of which plaintiff leased the premises described as "2225 West 50th Street" in Minneapolis for a period of two years, he taking "the said premises just as they are, without any liability or obligation" on the part of the lessor "of making any alterations, improvements or repairs of any kind." The property so leased is but a small part of defendant's two-story brick building located at the corner of Penn avenue south and West Fiftieth street. The ground floor is devoted to commercial enterprises, the second story mainly to living apartments. The basement is so designed by the owner and so used by the various tenants as to make it conveniently accessible to their respective business enterprises conducted by them immediately above. Thus we find that at the corner of Penn avenue and West Fiftieth street there is a food market, next to it is the space leased to plaintiff, and beyond is the Lake Harriet Cafe. We are not concerned with that part of the basement occupied by and immediately underneath the food market. Our problem is limited to the stairway located toward the rear of plaintiff's premises and used daily by him. Fronting on West Fiftieth street is plaintiff's barbershop, and immediately back of it is the living room used by him and his wife. Beyond it is a small kitchen with a door leading to a common landing at the head of the basement stairway, where there is also a door leading to the outside of the building. The stairway is extensively used by defendant's janitor and by other tenants.

Liability here is predicated upon breach of common-law duty, i. e., negligence. And this is founded upon (1) a claimed violation of the building code in that the stairway is of insufficient width and the treads and risers do not conform with its requirements; and (2) that defendant, as general owner of the property,

has retained supervision and possession of this stairway and that therefore it became and continued to be her duty to see that it was kept in a reasonably safe condition for plaintiff's lawful and proper use.

On July 1, 1942, plaintiff hired another man to operate his shop while he took a day off from his arduous job of barbering. His immediate and compelling reason was that he had a friend about to enter war service, and plaintiff wished to visit with him before he left. Just what they did for their joint entertainment is not clearly disclosed. At any rate, plaintiff did visit a Minneapolis tavern and later spent some of his leisure time with his friend. At least a part of this entertainment came in liquid form, i. e., beer. He claims that he had only two glasses (in no event more than three) during the entire day. The size of glass and its volatility are not specified, but in all likelihood both were moderate enough in amount and potency to permit him to navigate without any degree of unsteadiness the stairway in question, which he used often and with which he was entirely familiar. (Counsel for defendant has computed at 1,600 the number of trips up and down this stairway made by plaintiff prior to the time of his accident. This figure is not disputed by plaintiff, possibly because it is immaterial to the issues, and in this we find no reason to disagree with him.)

Having thus quietly, peacefully, and discreetly spent his pre-Fourth of July celebration, he wended his way homeward, arriving there at about 6:30. The basement, where are located toilet and shower-bath facilities, was his next and immediate objective. On his way down the stairway and at the second step or tread, although guided and supported by the railing to his immediate left, which he grasped with his left hand, the heel of his right foot "caught and tripped" him so that he fell to the basement floor, thereby sustaining the injuries complained of. Much commotion was caused thereby. Plaintiff's wife heard his fall and immediately rushed to his aid. Mr. and Mrs. Jensen, nearby neighbors, responded to her call for help, as did one Mr. Black. A doctor

living nearby was called, and he promptly arrived. An ambulance took plaintiff to a hospital after some 10 or 15 minutes' delay. Many people trod these dusty stairway steps before plaintiff was carried upstairs and placed in the ambulance.

Plaintiff's wife became interested in ascertaining the cause of her husband's fall. She testified that, with the aid of a flashlight, she discovered the head of a protruding nail in the second step near the center, about three inches from the outer edge of the tread. She claims that she discovered in the dust on the stairway an imprint of the heel of her husband's shoe, and she described in considerable detail a gouge or scratch in the rubber heel, which indicated to her that it had come in contact with some such obstruction as the protruding nailhead in the second step, which she claimed to be the cause of her husband's fall.

During plaintiff's cross-examination it developed that just as he was starting towards the stairway Mr. Black said to him, "Better watch your step, fellow," or words to that effect, and that plaintiff answered, "I can take care of myself." Plaintiff's claim is that he and Black were accustomed to speak jokingly of matters such as these and that Mr. Black's remark was not an indication on his part that plaintiff was at all under the influence of intoxicants. Be that as it may, counsel for defendant in his closing arguments to the jury made much of the fact that Black failed to appear at the trial; similarly, that the Jensens did not testify, nor was there any proof of the hospital record, which is supposed to give an account of an injured person's condition when he is brought there for treatment. The first part of it was missing, and its whereabouts remained unascertained. What became of it no one seems to know. There was also considerable discussion about plaintiff's shoes. His wife had taken these to the office of her lawyers some time after the accident and while her husband was still at the hospital. These shoes, when plaintiff became well enough to go back to work, were promptly put to their accustomed use and eventually resoled and reheeled, so that no firsthand evidence was available in respect to any scratch or gouge.

In a charge free from criticism or suggestion of any kind on plaintiff's part, the court submitted to the jury all fact issues presented. Nor is the charge questioned here.

Seventeen errors are assigned, and there were 15 exceptions taken to counsel's closing argument. These were taken after the argument had been concluded. With respect to these the court said (Record, p. 103, fol. 309):

"The court will instruct the jury specifically regarding these matters to which exception has been taken, that they are to disregard any comments of counsel not borne out by the evidence, and not supported by the evidence, except insofar as they furnish reasonably fair explanation of the evidence that was received."

We think the issues presented may be disposed of as follows: (1) Whether there was reversible error in the admission or exclusion of evidence, and (2) whether such error appears to have resulted to plaintiff because of the claimed misconduct of Mr. Robb, defendant's counsel.

First to be considered is excluded evidence, among which is the following: Defendant brought out on cross-examination of plaintiff that his wife had also fallen down this stairway. On redirect she was asked: "Q. Mr. Robb brought out from Mr. Waters that subsequently you fell? A. Afterwards, I did." Defendant objected to the question, and after some argument the court remarked that "there was some testimony along that line, but it seems to me that does not justify direct testimony as to any subsequent act, and I will sustain the objection." Plaintiff then offered to prove by the witness that "subsequent to the time that the plaintiff fell, she personally fell on the steps." Defendant's objection was sustained and the jury instructed to "disregard whatever has been said here regarding her fall—what was said by counsel." There was in this connection a somewhat heated discussion between counsel, also assigned as error here; but the whole thing is so obviously unimportant to any real issue in the case as to lead one to the conclusion that it is just a case of "much ado about nothing." *Cf.* Johnson v. Walsh, 83 Minn. 74, 75, 85 N. W. 910.

Another claimed error relates to the following testimony given by Mrs. Waters concerning one of plaintiff's shoes:

"In the center of the heel, a piece of rubber was gouged out on the sole of the shoe; there were definite marks of scraping, a definite scratch, fresh scratches in the sole of the shoe."

She further testified that plaintiff, upon resuming his barber work, used the shoes as he had theretofore; that later they were half-soled and new rubber heels put on; and, further, that he was wearing them at the time of trial. She also testified that she saw an impression of the heel of her husband's shoe on the second step immediately behind a protruding nail by reason of the fact that dust on the step made the impression discernible. Defendant moved to strike her testimony "in connection with these shoes." The court was of opinion that the motion should be granted because their "connection with the step here is too speculative to be submitted to the jury." Counsel for plaintiff then made the following offer of proof:

"We now offer to prove by the witness that when she made the statement that there was a gouge in the center of the heel, that she meant and intended to testify that the gouge was in the center of the forward portion of the heel. I will ask the witness if that is correct?"

Defendant's objection was sustained, because, said the court:

"I think that whole situation is too speculative to allow the jury to consider, and the motion to strike out the testimony with respect to the impression of the heel, etc. on the step is granted."

Obviously, what the court included in its ruling was limited to the supposed impression appearing in the dusty stairway and not to her testimony regarding the shoe.

Rejection of plaintiff's exhibit E, a photograph of a portion of the fifth tread of the stairway which the photographer identified as "Fifth step right edge; comes three feet from corner of fifth step," is said to constitute error. We fail to see wherein this or

any other step except the second entered into the chain of causation. There is no suggestion that plaintiff was tripped, caused to fall, or came in contact with this step. His only claim is that he tripped by coming in contact with the protruding head of a nail on the second step. As far as cause is concerned, the fifth step has no more to do with the case than any of the intervening steps below the one on which he fell.

■ It is well to bear in mind that on appeal error is never presumed. It must be made to appear affirmatively before there can be reversal. Not only that, but the burden of showing error rests upon the one who relies upon it. And we do not reverse unless there is error causing harm to the appealing party. In other words, error without prejudice is not ground for reversal. McDowell v. Hanson, 204 Minn. 349, 352, 283 N. W. 537; 1 Dunnell, Dig. & Supp. § 368, and cases cited in notes 55 and 56; Id. §§ 378, 424.

■ We think plaintiff's assertions of harmful result to his cause by reason of these rulings are lacking in substance. He does not claim that his fall was caused by any act or omission of defendant except that the stairway was not built to comply with the ordinance and that the projecting nail came into contact with the heel of his shoe. There is no evidence to oppose his claim in respect to the nail, since no witness for defendant testified on that phase. We can see no reason for suspecting, much less finding, that prejudicial results to plaintiff flowed from any of the rulings mentioned.

■ Next we turn to the question of whether evidence was erroneously admitted to plaintiff's prejudice. Only three witnesses testified for defendant. The first was Mr. Wilson, who held a clerical job in the city building inspector's office. He testified in respect to building permits issued and the records made and kept in his office pertaining to this building. He identified the building permits issued by that office; the official approval of construction; and that there had been, so far as his office disclosed, due compliance with the official rules, regulations, and requirements.

Next was Mr. Peterson, a graduate civil engineer of our university, who testified that he had prepared the diagrams and plats of the first floor, basement, stairways, etc., of this building, duly admitted in evidence without objection; that he had examined the building, basement, and stairways and had correctly portrayed the facts as shown on his plats in accordance with the structures as they actually were. As to this basement stairway, he expressed the opinion that it was a safe and sound structure and that he considered it to be in "very good condition." Answering Mr. Carlson's specific question, "You notice there is a nail protruding out of the step?" the answer was, "I don't think that [it] protrudes."

Lastly, we have Mr. McKenzie, who had charge of this property as defendant's agent. He testified that during the two years he had been in charge he had gone up and down this stairway at least 50 times and that he considered the steps "perfectly natural." No one, he said, had ever complained to him that there was anything wrong with this building, structurally or otherwise; that he had never received any "complaint of any kind" from any source. Neither plaintiff nor his wife claims to have made any claim of defect to anyone who had anything to do with the ownership or management of the building. Not even the janitor, whom they saw frequently, was taken into their confidence to the extent of being told about this defect at any time. The only ones so informed were plaintiff's counsel. To all others it was a profound secret until the time of trial.

■ Mr. Robb's closing argument was and still is a subject of much criticism by plaintiff. To discuss separately some 15 or more objections and exceptions would extend our opinion beyond all reasonable bounds. Sufficient for our purpose will be a consideration of those which we think may have had some bearing upon the issues.

Mr. Robb characterized the discovery and location of the offending nailhead as the "brain child" of plaintiff's wife. He founded his argument upon the testimony of the wife, which clearly disclosed that she was the one who discovered the nail; that at the

time of its discovery her husband was lying unconscious at the hospital, where he remained until July 28. Plaintiff testified that he did not recall whom he had told of his fall from the second step; that it was not until he had been home for some time that he told anybody that it was the second step that caused his fall. In his brief, Mr. Robb also comments upon the fact that the complaint in this action was dated July 22, and therefore he concludes that the entire case was developed by plaintiff's wife with the assistance of counsel engaged by her; that plaintiff himself, in the very nature of the facts recited, could not have had and did not have anything to do with the preparation or the formation and development of the theory upon which liability might be imposed.

It is further asserted that Mr. Robb was professionally guilty of misconduct in that during the course of the trial and while plaintiff's counsel was seeking to submit certain matters to the court for a ruling he caused to be interjected remarks to the effect that plaintiff's assertions as to what he desired to prove should be "cut out" because they were "histrionic." The court patiently waited until counsel finally finished with a rather fiery argument, saying, "The court has been waiting patiently for a chance to rule." The original motion made by Mr. Robb and finally submitted to the court was to strike certain evidence elicited from plaintiff's wife relating to what she observed in the dust on the second step and which she said was the imprint of her husband's heel. The court's ruling was:

"The objection embodied in your motion goes more to the weight of the testimony than to anything else, and I will let it stand for what it is worth, and deny the motion to strike, and we will adjourn * * * until tomorrow morning at 10 o'clock."

At the end of the trial and in answer to Mr. Carlson's inquiry as to what the court intended to strike, the court said (Record, p. 82, fol. 244):

"I think my ruling should be limited to striking out the testimony as to any impression or imprint of a heel on the stairway, that is all."

There are other objections in respect to the closing argument, particularly to some remarks made by Mr. Robb about the cause of plaintiff's fall. He stated that in his professional career he had never known, in a case involving the use of intoxicants, that the person involved would ever admit that he had taken more than two glasses. Obviously, his idea was to have the jury infer that plaintiff had taken too much beer, and that this was what caused his fall rather than being tripped by the nailhead. Plaintiff thinks that, since his testimony is unopposed, therefore it must stand. We are not prepared to hold that these arguments are so farfetched and so far away from legitimate and permissible argument as to call for reversal here. Naturally, we think that Mr. Robb could, as he did, call the jury's attention to the absence of Mr. Black, and to the fact that plaintiff himself admitted that Mr. Black made the remark which we have heretofore quoted, and to plaintiff's reply thereto.

Viewing the entire record, especially where, as here, the jury had been sent out to view the premises and this stairway, under instructions carefully limiting the purpose and scope of their view, we think the jury was not likely to go astray. The pertinent instructions on this phase read (Record, p. 56, folios 167-170):

"* * * In cases of this kind, the court sometimes authorizes a jury to view the premises. It is not, however, for the purpose of getting any new evidence. You are not to inquire of anybody out there with respect to anything connected with the situation; you are not to gather any information. You are just to view the premises. The purpose is not to get new testimony, as already intimated, but so you can more readily apply and understand the testimony which has been given you. That is the only purpose of the view. You will be in charge of the deputy sheriff both going and coming. * * *

"I repeat, I am sure you will understand this is not to get new evidence. Sometimes jurors have made the mistake of undertaking to find out what happened. Nothing like that. Keep away

from anything of that kind. You are to view the premises for the purpose of more readily understanding the situation."

These instructions clearly foreclosed every charge of misunderstanding or error when considered with the testimony of Mrs. Waters (Record, p. 52, fol. 154):

"Q. Did you ever tell anybody else but Mr. Carlson about that nail?

"A. No, sir.

"Q. Is it your testimony that that nail is still sticking up?

"A. Yes, sir.

"Q. When did you see it sticking up last?

"A. This morning.

"Q. Did you go down to look at it especially?

"A. Yes, sir."

The matter of granting a new trial for improper remarks or argument of counsel is one to be primarily determined by the trial court. No fixed rules can be formulated or applied. Each case must be determined in the light of all the surrounding facts and circumstances appearing in the case, and this court will not reverse except for clear abuse of discretion. We have decided numerous cases in matters of this kind. They are not in perfect harmony. There have been differences of opinion expressed in many of them. A citation of the cases is not deemed necessary, since they may be readily found in 5 Dunnell, Dig. & Supp. § 7102. After all,—

"Arguments of counsel are rarely limited to the immediate issues in the case, and very frequently take wide range in the field of oratory. Counsel are entitled to much latitude in this respect." Johnson v. Walsh, 83 Minn. 77, 85 N. W. 911, *supra.*

We think the jury's conclusion is well fortified by the evidence and that no reversible errors appear.

Order affirmed.

MR. JUSTICE STREISSGUTH took no part in the consideration or decision of this case.