*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0856**

Elfi E Janssen, et al.,
Appellants,

vs.

Lommen, Abdo, Cole, King & Stageberg P. A., et al.,
Respondents,

Sibley Holdings, LLC, et al.,
Respondents.

**Filed March 18, 2024
Affirmed
Slieter, Judge**

Hennepin County District Court
File No. 27-CV-13-13223

John E. Trojack, Trojack & Schniederjan Law Office, P.A., West St. Paul, Minnesota (for appellants)

William L. Davidson, Timothy J. O'Connor, Matthew D. Sloneker, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, Minnesota (for respondents Lommen, Abdo, Cole, King & Stageberg P.A., et al.)

Richard J. Thomas, Chris Angell, Burke & Thomas, PLLP, Arden Hills, Minnesota (for respondents Sibley Holdings, LLC, et al.)

        Considered and decided by Larson, Presiding Judge; Cochran, Judge; and Slieter, Judge.

**SLIETER**, Judge

This is an appeal from an adverse judgment following a trial of appellant's claims against respondents pursuant to the Minnesota Uniform Fraudulent Transfer Act (MUFTA).[1] Appellant argues that the district court erred by determining that she failed to prove that a fraudulent transfer occurred. Because the district court did not err by finding that appellant failed to prove a fraudulent transfer, we affirm.

## FACTS

In July 2013, appellant Elfi E. Janssen, both individually and in her capacity as trustee of the RIJ revocable trust,[2] sued respondents Lommen, Abdo, Cole, King & Stageberg, P.A. (Lommen), Robert J. King Jr., and Thomas F. Dougherty and respondents Sibley Holdings LLC, Anna E. MacCormick, Lauren MacCormick, John H. MacCormick, Holly A. MacCormick, and Padco Inc., alleging violations of MUFTA.

Relevant to this appeal, Janssen claimed fraudulent transfers by Anna,[3] violating MUFTA, Minn. Stat. §§ 513.41-.51(2012), and three separate counts against Lommen for aiding and abetting, conspiring, and colluding in the fraudulent transfers.

---

[1] In 2015, the MUFTA was replaced by the Minnesota Uniform Voidable Transactions Act (MUVTA) as to transactions after August 1, 2015. *See* 2015 Minn. Laws ch. 17, § 13. Because the transfers in this case pre-date 2015, MUFTA applies.

[2] Janssen's individual claims were dismissed in 2014. *Janssen v. Lommen, Abdo, Cole, King & Stageberg, P.A.*, No. A14-0452 (Minn. App. Dec. 22, 2014), *rev. denied* (Minn. Mar. 17, 2015). Despite this, we refer to appellant by her last name.

[3] Respondent-individuals with the last name MacCormick are referred to by their first names for clarity.

The following facts derive from the evidence received during the April 2022 MUFTA court trial. Because the facts presented during the trial overlap with the extensive litigation history, we provide headings for clarity.

*Bob's Assets and Transfers to Anna*

Bob Janssen and Elfi Janssen married in 1992 and divorced in 1994. In 2006, Bob created the RIJ revocable trust to make his spousal-maintenance obligations pursuant to their divorce decree. Bob funded the trust with four bonds which earned a combined annual interest sufficient to satisfy his spousal-maintenance obligation to appellant. The four bonds were held by the Royal Bank of Canada (RBC).

In 2005, Bob transferred two residential properties he individually owned, 1021 Sibley and 1160 Sibley, into a residential trust, naming his adult daughter from a prior marriage (Anna) as the beneficiary. In 2007, Bob transferred ownership of his company, Padco Inc., to Anna.

Bob was hospitalized in 2008. While in the hospital, Bob revoked the RIJ trust. Anna was a formal witness to Bob's trust-revocation signature. Shortly thereafter, Bob directed RBC to transfer the four bonds from the RIJ trust to his personal RBC account. In February 2010, one of the bonds that was transferred from the RIJ trust to Bob's account was sold.

Bob died in July 2010. Because Anna was the named beneficiary on Bob's RBC account, which included the three remaining bonds that had been held by the RIJ trust, the assets in the account were transferable to her upon his death. Anna subsequently transferred the assets from Bob's RBC account into her personal RBC account. Ownership

3

of the 1021 and 1160 Sibley houses were transferred to Anna under the terms of the residential trust. In the fall of 2010, Anna's siblings filed a petition in district court contesting the probate of Bob's will. Attorney Robert King, with Lommen, represented Anna throughout the case.

### RIJ Trust Litigation

In May 2011, Janssen, as trustee of the RIJ trust, filed a petition and joined the probate action initiated by Anna's siblings, seeking to void the 2008 revocation because Bob lacked capacity and/or was unduly influenced by Anna. King represented Anna in the trust-revocation action as well.

Anna began borrowing from her RBC account to cover mounting legal costs, business expenses, and tax obligations. Eventually, she discussed the need for additional estate planning with King, who recommended that she work with his colleague, attorney Thomas Dougherty. In February 2012, Anna met with Dougherty to discuss her outstanding legal fees with Lommen and her personal-estate plan. Regarding estate planning, Anna explained her need for a smooth transition of her assets because two of her adult children are autistic and are "not emotionally capable of handling the responsibility" of settling an estate. Dougherty recommended creating a limited liability company (LLC) and transferring assets to that LLC. Regarding Anna's unpaid legal fees with Lommen, Dougherty recommended that Anna give Lommen mortgages on her real property to secure the debt.

Consistent with Dougherty's recommendation, Anna established Sibley LLC in April 2012. Anna transferred Padco Inc. stock, 1021 Sibley, and 1160 Sibley to Sibley

4

LLC. Anna later gave each of her three children a 1% ownership interest in Sibley LLC and she continued to own the remaining 97%.

In May 2012, Anna executed a promissory note, agreeing to pay Lommen for outstanding and future legal fees, secured by mortgages on two pieces of real estate, one of which was 1160 Sibley.

In June 2012, Anna transferred the three bonds that had been previously held by the RIJ trust from her RBC account to Sibley LLC.

In July 2012, the district court, in its order following the contested RIJ trust proceeding, found that the RIJ trust revocation was invalid due to Bob's lack of capacity and Anna's undue influence. This part of the RIJ trust litigation did not address the post-trust-revocation transfers of assets to Anna.

In 2015, Janssen sought, via a summary-judgment motion in the RIJ trust litigation, a judgment declaring all post-trust-revocation transfers of RIJ trust assets void. The district court granted Janssen's motion for summary judgment, determining that all transfers relating to the bonds are void. The district court entered judgment against Anna in the amount of $249,041.67 and ordered Anna to transfer the bonds previously held by the RIJ trust back to the RIJ trust. Anna complied with the order and transferred the three remaining bonds back to the RIJ trust.

The district court issued an amended order in June 2015, which increased the judgment against Anna by $100,000 to account for the value of the bond that had been previously sold. Anna appealed, and this court affirmed. *See In re RIJ Revocable Tr.*, No. A15-1344, 2016 WL 3659149 at *1 (Minn. App. July 11, 2016).

5

Sibley LLC sold 1160 Sibley in September 2017. After satisfying a more senior mortgage, the balance of $226,337.69 was deposited with the district court pending its determination of whether appellant or Lommen is entitled to the funds.

***Appealed MUFTA Judgment***

The district court, in the underlying MUFTA action, issued its judgment in October 2022. The district court determined that none of the transfers by Anna were fraudulent pursuant to MUFTA. The district court further determined that, because none of the transfers were fraudulent pursuant to MUFTA, all claims against Lommen fail.

Janssen appeals.

## DECISION

On appeal from judgment following a court trial, "we do not reconcile conflicting evidence." *Porch v. Gen. Motors Acceptance Corp.*, 642 N.W.2d 473, 477 (Minn. App. 2002), *rev. denied* (Minn. June 26, 2002). We give great deference to the district court's factual findings and will not set them aside unless clearly erroneous. *Id.* "A finding is clearly erroneous if we are left with the definite and firm conviction that a mistake has been made." *In re Distrib. of Att'y Fees between Stowman Law Firm, P.A. & Lori Peterson Law Firm*, 855 N.W.2d 760, 761 (Minn. App. 2014) (quotation omitted), *aff'd*, 870 N.W.2d 755 (Minn. 2015). "Whether a debtor made a transfer with fraudulent intent is ordinarily a question of fact." *Citizens State Bank of Norwood Young Am. v. Brown*, 849 N.W.2d 55, 65 (Minn. 2014).

Janssen summarily states that the district court improperly entered judgment in favor of respondents. *See Waters v. Fiebelkorn*, 13 N.W.2d 461, 464-65 (Minn. 1944) ("[O]n

6

appeal error is never presumed.  It must be made to appear affirmatively before there can be reversal . . . [and] the burden of showing error rests upon the one who relies upon it."). In the interest of thoroughly considering appellant's claims, we consider whether the district court's findings related to Anna's transfers of assets are clearly erroneous.

MUFTA was designed to "prevent debtors from placing property that is otherwise available for the payment of their debts out of the reach of their creditors." *Citizens State Bank*, 849 N.W.2d at 60.  The act "allows creditors to recover assets that debtors have fraudulently transferred to third parties." *Finn v. Alliance Bank*, 860 N.W.2d 638, 644 (Minn. 2015).  The district court considered two sections of MUFTA in its order.  We next consider each.

### Minn. Stat. § 513.44

Minnesota Statutes section 513.44 "allows creditors to recover assets that a debtor transfers with fraudulent intent."  *Id.*  A claim brought pursuant to section 513.44 is "typically referred to as a claim of actual fraud," and "requires a creditor to prove that the debtor made the transfer with the 'actual intent to hinder, delay, or defraud any creditor of the debtor.'"  *Id.* (citing Minn. Stat. § 513.44(a)(1)).  "Because actual intent to defraud a creditor is 'rarely susceptible of direct proof,' . . . a creditor may rely on various 'badges of fraud,' such as whether a transfer was made to an 'insider' and whether the transfer was 'disclosed or concealed,' Minn. Stat. § 513.44(b), to prove a debtor's fraudulent intent." *Id.* at 645.  In determining whether a transfer was made with actual intent to defraud, "consideration may be given, among other factors," to the following 11 factors:

> (1) the transfer or obligation was to an insider;

7

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Minn. Stat. § 513.44(b).

The district court thoroughly considered the 11 factors and found that appellant had not proved that the transfer was made with fraudulent intent. The district court considered the testimony and reconciled conflicting testimony when making its determination. *Porch*, 642 N.W.2d at 477. Many of its findings relied on testimony that it deemed more credible than contrary testimony. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988) (noting that appellate courts defer to the district court's credibility determinations).

Despite acknowledging that deference is paid to a district court's credibility determinations, Janssen states that the direct testimony provided by respondents is

unreliable.  But Janssen has not indicated what testimony by respondents is unreliable. And even if appellant had identified such testimony, we defer to the district court's credibility determinations.  *Id.*

Moreover, "the evidence as a whole" sustains the district court's findings.  *In re Salkin*, 430 N.W.2d 13, 16 (Minn. App. 1988), *rev. denied* (Minn. Nov. 23, 1988).  As the district court noted, the timing of the transfers may initially appear suspicious in light of the contested trust action.  *See* Minn. Stat. § 513.44(b)(4) (noting that ongoing litigation can be indicative of fraudulent intent).  But the district court noted that "the evidence presented at trial undercuts" a finding that the transfers involved fraudulent intent.  When Anna testified that Sibley LLC was formed for estate-planning purposes, she stated:

> My intent was to form a document that took the burden off of my two adult autistic children and whatever would have the least impact on them because I was not in good health.  And the current documents, the way they were, were not appropriate, the trust and the—that's why they were never funded.  It was part of the reason why they were never funded.
>
> I needed a cleaner vehicle that took all of that estate planning out of their hands and was handled by somebody else. I needed a clean transition if something happened to me because they weren't capable and I didn't want there to be any contention between my children the way they were—there was in my family.

The district court "f[ound] [Anna's] testimony on these points to be credible."  It explained:

> [Anna] testified during trial that the creation of Sibley was for estate planning purposes to easily pass along her assets to her three children.  She testified she had multiple serious health concerns at the time and was concerned that her affairs were not yet in order.  Her concern regarding an easy transition was because two of her three children have autism, and she did not feel they could understand complex legal matters and wanted any transfer after her passing to be seamless for them.

9

> The court finds [Anna's] testimony on these points to be credible.

The district court further explained its findings:

> Mr. Dougherty testified that [Anna] never asked him about shielding assets from creditors, that he was aware an LLC would not shield assets from creditors in all cases, and that he neither transferred the remaining Bonds into Sibley nor advised [Anna] to do so. The court finds the testimony of Mr. King and Mr. Dougherty relating to their respective representations of [Anna] credible.

When Dougherty testified about the creation of Sibley LLC, he clarified that he recommended creating an LLC to meet Anna's estate-planning goals. He explained that "[Anna] wanted a kind of easy self-effectuating transmission of assets from her to the next generation. An LLC, in my opinion, facilitates that."

Again, we defer to the district court's credibility determinations, *Sefkow*, 427 N.W.2d at 210, and "we do not reconcile conflicting evidence," *Porch*, 642 N.W.2d at 477. Thus, the district court's finding that Anna's transfer of assets was not done with fraudulent intent is not clearly erroneous.

***Minn. Stat. § 513.45***

Minnesota Statutes section 513.45(a) states that:

> A transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer.

The district court found that "credible evidence presented to the court shows that [Anna] did, in fact, receive the reasonably equivalent value for all the transfers at issue."

10

The record supports this determination. The record shows that Anna transferred the assets to Sibley LLC, of which she remained the 97% shareholder, for estate-planning purposes. The district court also found that Janssen presented no evidence demonstrating that Anna did not receive equivalent value for the transfer, and it found that the transfer did not violate Minn. Stat. § 513.45(a).

On appeal, Janssen argues that "[Anna] did not receive reasonably equivalent value as discussed above." Janssen's previous discussion suggested that, receiving ownership of Sibley LLC was insufficient value for the assets that were transferred. Again, the district court found that no evidence was presented by Janssen that the value of Sibley LLC was not reasonably equivalent to the assets that Anna transferred to it. And Janssen fails to present an argument explaining why the district court's finding that Anna received reasonably equivalent value for the transfer was erroneous. *Waters*, 13 N.W.2d at 464-65. Given the finding was predicated on credibility determinations, *Sefkow*, 427 N.W.2d at 210, and required resolving conflicting evidence, *Porch*, 642 N.W.2d at 477, the district court's finding that the transfer was not fraudulent pursuant to Minn. Stat. § 513.45 is not clearly erroneous.[4]

**Affirmed.**

---

[4] Because we affirm the district court's findings that transfers were not fraudulent under sections 513.44 or 513.45, we need not consider whether the district court erred in finding that Lommen did not aid and abet, conspire, or collude to defraud appellant.