*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-2042**

Christopher S. Chaudhry,
Relator,

vs.

Mystic Lake Casino,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed June 22, 2026**
**Affirmed**
**Schmidt, Judge**

Department of Employment and Economic Development
File No. 51906057-3

Christopher S. Chaudhry, Minneapolis, Minnesota (pro se relator)

Greg S. Paulsen, Brodeen & Paulson, PLLP, New Brighton, Minnesota (for respondent Mystic Lake Casino)

Rebecca Wittmer, Keri A. Phillips, Minnesota Department of Employment and Economic Development (for respondent Department)

Considered and decided by Smith, Tracy M., Presiding Judge; Schmidt, Judge; and Beane, Judge.

**NONPRECEDENTIAL OPINION**

**SCHMIDT**, Judge

Relator Christopher S. Chaudhry challenges the unemployment law judge's (ULJ) decision affirming respondent Minnesota Department of Employment and Economic Development's (DEED) determination that Chaudhry is ineligible for unemployment insurance benefits because he was discharged for employment misconduct. We affirm.

**FACTS**

Chaudhry worked for respondent Mystic Lake Casino. The casino's policies "require team members to exercise good judgment," to behave "in accordance with policies while on [the casino's] property and/or attending [casino]-sponsored events outside of working hours," and to "always display courteous and professional conduct toward fellow team members and [the casino's] guests." Chaudhry was informed of these policies during orientation when he first began working for the casino.

While off duty, Chaudhry boarded a parked bus that was shuttling people to the casino. Another passenger was loudly playing music on their phone speaker. Chaudhry remarked that the passenger "can't afford $5.00 headphones but you're going to the casino. That makes sense. That makes sense." The passenger stood up and confronted Chaudhry. The verbal altercation escalated, with Chaudhry calling the passenger a "punk," a "bum," and a "crackhead bum." The passenger swiped at and threatened Chaudhry. As the bus driver entered the bus, the two men continued to argue while explaining what happened to the bus driver. Chaudhry told the driver that the passenger assaulted him and asked the driver to call the police. The bus driver told both men to get off the bus.

The casino received a complaint about an assault on the bus that day and investigated the incident. The investigator interviewed Chaudhry twice. The first interview took place on the same day as the bus incident. During the interview, Chaudhry stated that "he did not initiate the conversation with the guest," that "he was assaulted by the guest when he was still in his seat," and that "he tried to de-escalate the situation."

After the first interview, the casino reviewed video footage from the bus incident. During a second interview, the casino representative did not disclose that they had viewed the footage of the bus incident and asked Chaudhry to recount his version of events again. Chaudhry offered the same version of his story as he relayed in his first interview. The casino discharged Chaudhry for violating its policies.

Chaudhry applied for unemployment insurance benefits. DEED determined that he was ineligible after having been discharged for misconduct. Chaudhry appealed. A ULJ held an evidentiary hearing, at which Chaudhry, the casino's representative, the manager of investigative operations, and the compliance investigator all testified. The ULJ accepted several exhibits into evidence, including video from the bus of the incident.

Following the hearing, the ULJ confirmed that Chaudhry was ineligible for unemployment insurance benefits because he was discharged for employment misconduct. Chaudhry requested reconsideration of the decision. On reconsideration, the Chief ULJ affirmed the decision that Chaudhry was ineligible for unemployment insurance benefits because he was discharged for employment misconduct.

This appeal by writ of certiorari follows.

**DECISION**

Employees discharged for misconduct are ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4 (2024). Misconduct is defined as "any intentional, negligent, or indifferent conduct, on the job or off the job, that is a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." Minn. Stat. § 268.095, subd. 6 (2024). "[R]efusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002) (citation omitted).

Whether an employee engaged in conduct that disqualifies them from unemployment benefits is a mixed question of fact and law. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011). We view the ULJ's factual findings in the light most favorable to the decision. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). Whether a particular act "constitutes employment misconduct is a question of law, which we review de novo." *Id.*

Chaudhry argues the ULJ erred when it determined that the casino discharged him due to employment misconduct because (1) the decision rests on inconsistent testimony; (2) the ULJ credited the bus footage without adequate context; (3) the ULJ failed to consider the record as a whole; and (4) the fairness of the proceedings were undermined when a new ULJ was assigned to his matter. We address each challenge in turn.

4

**A.** **The ULJ considered the testimony of each witness and set out reasons for crediting certain testimony.**

Chaudhry argues the ULJ failed to provide reasons for crediting certain evidence and that its decision rests on inconsistent testimony. A ULJ "must set out the reason for crediting or discrediting" testimony when a witness's credibility has a significant effect on the outcome of a decision. Minn. Stat. § 268.105, subd. 1a(a) (2024).

Here, the ULJ's decision had a section about "credibility" and noted that its findings were based on witness testimony and the bus video. Where the testimony conflicted, the ULJ used the bus video as "the most credible evidence[.]" Our review of the record reveals that the ULJ's findings are supported by testimony, exhibits, and the security footage from the bus. We conclude that the ULJ substantiated its credibility determinations as required by statute and properly resolved conflicting testimony.

**B.** **The ULJ did not improperly credit the video footage.**

Chaudhry argues that the ULJ improperly credited the video footage. Chaudhry's argument lacks sufficient detail for us to evaluate the issue. And we cannot presume error on appeal. *Waters v. Fiebelkorn*, 13 N.W.2d 461, 464-65 (Minn. 1944). Any alleged error "must be made do appear affirmatively before there can be reversal." *Id.* at 465. The burden of showing error rests upon the party asserting error. *Id.*

Chaudhry claims that the casino did not submit "the full video." But neither Chaudhry's argument on appeal nor his request for reconsideration articulated what he believes is missing from the video. As such, we conclude that the ULJ appropriately considered the video in making its decision.

5

**C.** **The ULJ considered the entire record.**

Chaudhry argues that the ULJ failed to consider the record as a whole. We disagree. Chaudhry's application for benefits and the circumstances of his discharge were thoroughly evaluated by the ULJ over the course of three hearings at which four witnesses testified and several exhibits were received into evidence. The Chief ULJ reviewed Chaudhry's request for reconsideration and came to the same conclusion. Chaudhry does not articulate what he believes the ULJ failed to consider or how that evidence could change the outcome. We cannot presume error on appeal. *Id.* at 464-65. Error must be affirmatively shown, and that burden rests on the one who seeks review. *Id.* at 465. Chaudhry failed to carry that burden and we discern no error by the ULJ in our review of the record.

**D.** **Reassignment of the ULJ did not result in unfair proceedings.**

Chaudhry argues that reassignment of a new ULJ for his third hearing resulted in unfair proceedings. Chaudhry does not articulate how having a different ULJ preside over his final hearing affected the outcome of his case. All ULJs who presided over Chaudhry's case had the benefit of reviewing the same exhibits, written statements, and filings.

We conclude that the ULJ did not err in determining that Chaudhry was discharged for employment misconduct and that Chaudhry was, therefore, ineligible to receive unemployment insurance benefits.

**Affirmed.**